1  KEKER & VAN NEST LLP
   STEVEN P. RAGLAND - # 221076
2  sragland@kvn.com
   AJAY KRISHNAN - # 222476
3  akrishnan@kvn.com
   TAYLOR GOOCH - # 294282
4  tgooch@kvn.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
6
   ATABEK & ASSOCIATES, P.C.
7  JON A. ATABEK, Esq. - # 269497
   jatabek@atabeklaw.com
8  300 Spectrum Center Dr., Ste. 400
   Irvine, CA 92618
9  Telephone:    213 394 5943

10 DISABILITY RIGHTS LEGAL CENTER
   ANNA RIVERA - # 239601
11 Anna.Rivera@drlcenter.org
   KARA JANSSEN - # 274762
12 Kara.Janssen@drlcenter.org
   256 S. Occidental Blvd., Suite B
13 Los Angeles, CA 90057
   Telephone:    213 736 1031
14
   Attorneys for Plaintiffs
15 EVERETT JEWETT, LEGAL SERVICES FOR PRISONERS
   WITH CHILDREN, GLEN HAROLD EVERETT, MICHAEL
16 DONALD ACKLEY, HAROLD ROBERT MARQUETTE

17                UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19 EVERETT JEWETT, LEGAL SERVICES FOR PRISONERS WITH CHILDREN, GLEN HAROLD EVERETT, MICHAEL DONALD ACKLEY, HAROLD ROBERT MARQUETTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHASTA COUNTY SHERIFF'S DEPARTMENT, A PUBLIC ENTITY; TOM BOSENKO, as Sheriff of the Shasta County; SHASTA COUNTY, a public entity; and CALIFORNIA FORENSIC MEDICAL GROUP, INC. a private entity; and DOES 1 through 25, in their individual capacities,<br><br>Defendants. | Case No. 2:13-cv-0882 MCE AC (PC)<br><br>**FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>1.  **Americans with Disabilities Act (42 U.S.C. § 12131 et seq.)**<br>2.  **Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.)**<br>3.  **California Government Code Section 11135, et seq.**<br>4.  **Unruh Civil Rights Act (Cal. Civil Code §51, et seq.)**<br>5.  **California Government Code § 4450, et seq.**<br>6.  **Violation of California Civil Code § 52.1 (Bane Act)**<br><br>Date Filed:  May 16, 2013<br>Trial Date:  Not Assignedd |

## INTRODUCTION

1.      More than twenty-five years after the Americans with Disabilities Act was made the law of the land, the Shasta County Sheriff's Department, Shasta County, and California Forensic Medical Group, Inc., continue to ignore its mandates, and disobey it and other federal and state law—routinely violating the civil rights of named Plaintiffs and all those similarly situated.  There is no excuse or justification for this conduct and it must be remedied.

2.      This lawsuit addresses Defendants' systemic and pervasive discrimination against people with mobility disabilities in the Shasta County Jail, located in Redding, California (the "Jail").  Despite the acute need for accommodations and physical access within the Jail, Shasta County ("County"), Shasta County Sheriff's Department ("SCSD"), and California Forensic Medical Group ("CFMG") fail to provide any legally acceptable level of access, services, or accommodations for people with disabilities held at the Jail.

3.      People with mobility disabilities are denied accommodations, provided inadequate accommodations, inappropriately segregated from the general population, placed in 23 hour lock down, excluded from jail programs and services, and subjected to multiple and pervasive physical access barriers throughout the facilities.  The result is a system that imposes some of the worst conditions on people with mobility disabilities while at the same time excluding them from the most beneficial programs within the jail.  These conditions have dire mental and physical consequences and are in flagrant violation of the law.

4.      Starting with the time they are processed, persons with mobility disabilities face myriad discriminatory conditions and physical barriers.  For example, the initial intake area booking cells do not have the required assistive devices to allow a person with a physical disability to use the toilet safely and/or independently.  Additionally, disabled persons must surrender their assistive devices, such as canes and crutches, upon entering the Jail and are not provided with replacement assistive devices for multiple weeks or more.

5.      Prisoners with mobility disabilities are frequently segregated from the general population in the Jail's Outpatient Housing Unit ("Medical Unit"), which is operated by Defendant CFMG in conjunction with the County and SCSD, due solely to their need for assistive

devices, such as canes, walkers, wheelchairs, and prostheses.  While segregated, they are put on twenty three hour lock down, despite not having committed any infraction to warrant such a punishment.  This segregation is in direct violation of federal and state anti-discrimination laws.  Furthermore, none of the cells in the Medical Unit contain required access features.  The cells lack sufficient clearance and knee space to allow a wheelchair user to freely navigate within the cell.  The cells lack hand bars to permit persons with mobility disabilities to independently use the toilet.  In fact, some cells do not even have beds, instead requiring prisoners with mobility disabilities to sleep on a thin mat on the floor.  Additionally, prisoners housed in the Medical Unit, are not given the opportunity to consistently take advantage of adult schooling programs or attend religious services in the same manner as their non-disabled peers.

6.      To be housed outside of the Medical Unit, prisoners with mobility disabilities are routinely required to give up their assistive devices, including the use of their canes, walkers, wheelchairs, or prosthesis.  If housed outside the medical unit, prisoners with physical disabilities face pervasive architectural barriers.  Many of the hallway doors have one inch beveled thresholds preventing persons using assistive devices from passing through safely.  All of these housing units' day rooms lack required access features, such as handrails or grab bars in the showers.  The day rooms also have no wheelchair seating.  The housing units' cells lack grab bars to allow prisoners to safely and independently use the toilet and lack sufficient clearance and knee space to allow a wheelchair user to freely navigate within the cell.  Even the stairs, which must be climbed to access the second tier of cells, do not provide adequate handrail extensions to allow persons with impaired mobility to climb them safely and people with mobility disabilities may be housed in these upstairs cells despite the difficulties they experience in having to go up and down the stairs.

7.      Disabled prisoners pleas for a safe living environment are either routinely denied or are not made by the prisoners because of fear of retribution by Jail Staff.  Prisoners, are not only often misinformed about the grievance process, but consistently not informed at all that such a process exists.  Furthermore, the prisoners that do file grievances are threatened that they will be placed in an even more restrictive environment.  Additionally, prisoners' food is often tainted

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

and inedible following the filing of a grievance.  The Jail even retaliates against disabled prisoners seeking legal advice, by punishing them following attorney client meetings.  This lack of information and constant threat of retaliation renders the grievance procedure ineffective and not available to prisoners.

8.      These, and many other conditions, result in a system that violates the fundamental rights of people with disabilities within the Jail.  Plaintiffs thus initiate this suit under Title II of the America with Disabilities Act, 42 U.S.C. 12131, *et seq.* (the "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), as well as analogous state statutes, to remedy this rampant discrimination against Plaintiffs based on their disabilities.

9.      Plaintiffs seek declaratory and injunctive relief pursuant to the above statutes, as well as an award of attorneys' fees and costs under applicable law.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343.  Through the same actions and omissions that form the basis of Plaintiffs' federal claims, Defendants have also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  This Court also has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.      Venue over Plaintiffs' claims is proper in the Eastern District of California because Defendants reside in the Eastern District of California within the meaning of 28 U.S.C. § 1391 and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of California.

## PARTIES

12.      Plaintiffs are persons with mobility disabilities who are or were housed within Shasta County Jail facilities.  They bring this lawsuit on behalf of themselves and all present and future prisoners and detainees with mobility disabilities who are or will be housed in the Shasta County Jail.

13.     Plaintiff Everett Jewett suffers from chronic pain and has bulging and herniated discs in his spinal column, degenerative disc disease, spinal stenosis, and muscular neuropathy. As a result of these conditions, which substantially limit his ability to walk, Mr. Jewett uses a cane.  Mr. Jewett is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.  Mr. Jewett has been detained and/or incarcerated in the Shasta County Jail multiple times over the past decade and was most recently there from April of 2013 to December of 2014. On each occasion, Mr. Jewett has had a number of disability-related problems at the Jail, including but not limited to denial of accommodations, physical access, and access to programs at the jail.

14.     Plaintiff Glen Harold Everett has Type II diabetes, muscular neuropathy, chronic back pain, degenerative disk disease, and bulging discs.  As a result of these conditions, which substantially limit his ability to walk, Mr. Everett uses a cane.  Mr. Everett is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.  Mr. Everett has had a number of disability-related problems, including but not limited to denial of accommodations, physical access, and access to programs at the jail.

15.     Plaintiff Michael Don Ackley has extensive back and leg injuries which were caused when he was crushed by a heavy pipe nearly twenty years ago.  As a result of these injuries, which substantially limit his ability to walk, Mr. Ackley has used a variety of assistive devices in the past and currently uses crutches.  Mr. Ackley is a "qualified person with a disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.  Mr. Ackley has had a number of disability-related problems, including but not limited to denial of accommodations, physical access, and access to programs at the jail.

16.     Plaintiff H. Robert Marquette has prostate cancer, a traumatic brain injury that causes seizures, and a back injury.  As a result of these conditions, which substantially limit his ability to walk, Mr. Marquette uses a cane.  Mr. Marquette is a "qualified person with a

disability" within the meaning of all applicable statutes including 42 U.S.C. §12131(2), 29 U.S.C. §705(20)(B), and California Government Code § 12926.  Mr. Marquette has had a number of disability-related problems, including but not limited to denial of accommodations, physical access, and access to programs at the jail.

17.     Plaintiff Legal Services for Prisoners with Children ("LSPC") is a non-profit organization founded in 1978.  LSPC advocates for the civil rights and empowerment of incarcerated parents, children, family members, and people at risk for incarceration by responding to requests for information, training, technical assistance, litigation, and community activism.

18.     LSPC has done significant work to raise awareness regarding the concerns of elderly prisoners and their unique needs in part due to the physical limitations and disabilities that occur more frequently among older prisoners.

19.     In 2003, LSPC launched "All of Us or None," a grassroots organizing initiative of former prisoners that fights for the rights of the formerly and currently incarcerated people and their families.  The goal of All of Us or None is to strengthen the voices of the people most affected by the "prison-industrial complex."  All of Us or None is a membership organization comprised of a network of chapters and associated organizations nationwide, including a chapter in Sacramento, California.  There are approximately 13,000 members of All of Us or None nationwide, 200 of whom reside in Northern California.

20.     LSPC currently expends substantial time and resources on advocacy work concerning policies and procedures that affect individuals, including individuals with disabilities, who are incarcerated in California's prisons and local county jails including the Shasta County Jail.  These projects include advocacy around the effects of the Criminal Justice Realignment Act, which shifts people convicted of "non-serious," "non-sexual," and "nonviolent offenses" out of the state prison system and into county jurisdiction and county jails.  This work includes improving the conditions at county jails, many of which were not designed for long-term incarceration and lack access to sunlight, exercise, and programming opportunities, and ensuring full access to all programs and services for disabled people.

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1062780.01

21.     LSPC has been injured as a direct result of the Defendants' actions and omissions as alleged herein.  LSPC's interests are adversely affected because it must expend resources, as it is doing in this lawsuit, advocating for its constituents who are harmed by the Defendants' discriminatory policies and practices.

22.     In addition, one or more members of LSPC's All of Us or None project have been injured as a direct result of Defendants' discriminatory policies and practices.

23.     LSPC can bring this action on behalf of its members because the interests at stake are germane to LSPC's purpose and because LSPC seeks only declaratory and injunctive relief, individual members are not required to participate to bring this lawsuit forth.

24.     The Plaintiff class consists of all present and future detainees and prisoners with mobility disabilities who are or will be housed in the Shasta County Jail.

25.     Hereafter, references to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

26.     Defendant Shasta County ("County") is a local government entity within the meaning of Title II of the ADA.  The County is responsible for providing the jail facilities and for funding the construction and operations of the Shasta County Jail facility.  The County is further responsible for the funding and oversight of Defendant Shasta County Sheriff's Department.  The County also promulgates policies and procedures at these facilities.

27.     Presently, and at all times relevant to this complaint, Defendant County received federal financial assistance within the meaning of the Rehabilitation Act.

28.     Presently, and at all times relevant to this complaint, Defendant County received state financial assistance within the meaning of Government Code Section 11135.

29.     Defendant Shasta County Sheriff's Department ("SCSD") is a local government entity created under the laws of the State of California, and an agency of Defendant County and a public entity within the meaning of Title II of the ADA.  The SCSD is responsible for operating the Shasta County Jail facility, including promulgating policies and procedures for that facility.

30.     Presently, and at all times relevant to this complaint, Defendant SCSD  has received federal financial assistance within the meaning of the Rehabilitation Act.

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

31.     Presently, and at all times relevant to this complaint Defendant SCSD has received state financial assistance within the meaning of Government Code Section 11135.

32.     Defendant Tom Bosenko is the Sheriff of Shasta County.  He is an elected official of the County and is responsible for the oversight of Defendant SCSD and implementation of its policies.  Plaintiffs name Defendant Bosenko in his official capacity only.

33.     Defendant California Forensic Medical Group ("CFMG") is a for-profit corporation organized under the laws of the State of California and employs fifty (50) or more persons.  CFMG provides all health care services to prisoners in the Jail pursuant to a contract with the County.

34.     Does 1-25 are current or former Jail Staff or CFMG staff.  Does 1-25 were at all times relevant acting in the course of their employment.  On information and belief, each Doe 1-25 participated in the incarceration of Mr. Jewett, as well as the decisions to deprive him of assistive devices and to threaten him when he complained about the failure of Defendants to reasonably accommodate his mobility impairment.  On information and belief Shasta County Sheriff's Department, Tom Bosenko, Shasta County, and CFMG are in possession of records that will identify Does 1-25.  In due course, Plaintiffs will amend this Complaint to identify these Defendants' true names when they have been ascertained.

35.     Plaintiffs are informed and believe and thereon allege that each defendant was the agent and employee of every other defendant and was at all times acting within the scope of such agency.

36.     Hereafter, references to Defendants shall be deemed to include all named Defendants, unless otherwise indicated.

## FACTS APPLICABLE TO ALL CLAIMS

**Background and History**

37.     The Shasta County Jail is a high security local detention facility used for the detention of persons who are pending arraignment, undergoing trial, or serving a sentence of commitment.  The Jail was built in 1984 and can hold up to 381 prisoners; 317 males and 64 females.  The facility is attached to the Justice Center, which includes the Municipal and Superior

7

1062780.01

Courts of Shasta County, and is located at 1655 West Street, Redding.  In 2015, the annual budget for the Jail was over $14 million dollars.  The County is currently in the process of building a new, additional, 64-bed jail to be located in Redding, California that would provide vocational training to prisoners.

38.     The Jail provides custodial and security services for incarcerated and detained individuals for the SCSD.  The Jail is operated by Defendants County and SCSD, which contract with Defendant CFMG to provide medical care, including mental health care.  In doing so, the Defendants are responsible for the health, safety, care, and welfare of those individuals housed in the Jail's facilities, including individuals with disabilities.

39.     The Jail consists of an entry level floor and three additional levels of prisoner housing.

40.     The entry level floor includes the lobby, visitor security entrance, lobby restrooms, booking and intake areas, visiting areas, and the Medical Unit.

41.     The three upper levels are composed of housing and are referred to as Level 1, Level 2, and Level 3.  Each of these levels are divided into four pods - A, B, C and D - each consisting of two floors, referred to as an upper and lower tier.  Each pod has a shower and day room with dining tables on the lower tier.  In addition, each Level has access to a classroom and an outdoor exercise yard with an outdoor restroom.

42.     Each prisoner has his own cell or shares a cell with another prisoner.  Each cell includes a toilet, sink, mirror, and bed, or beds if shared.  A typical housing module includes cells that open onto a common day room area equipped with tables, chairs, and telephones.  Housing units consist of a main level that is on the same level as the elevator serving that level, plus an upper level accessible only via a stairway from the day room.

43.     There are no areas of the Jail that are specifically designated for use specifically by, or to otherwise accommodate, prisoners with mobility disabilities.

44.     Defendant County has constructed, altered, or repaired the Jail since the enactment of the ADA,

45.     The Jail was constructed after the enactment of the Rehabilitation Act of 1973.

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1062780.01

46.     The Jail was constructed after the enactment of California Government Code 11135.

47.     Rehabilitation Act, California Government Code § 4450, Title 24 of the California Code of Regulations ("Title 24"), and California Government Code § 11135.  The aforementioned laws forbid discrimination against people with disabilities in public services and programs, in particular services and programs that are funded using financial assistance from the State and/or Federal government.  California Government Code § 4450 and Title 24 provide specific accessibility requirements for buildings, structures and/or related facilities which are constructed using state, county, and/or municipal funds.  Despite these obligations, the County failed to construct, alter, and/or repair the Jail in compliance with these laws.

48.     Additionally, the County has never performed a complete assessment of the physical and programmatic accessibility of the Jail and has never created a complete transition plan to improve the accessibility of the Jail for the individuals detained and incarcerated therein as required by the ADA, Rehabilitation Act, and California Government Code § 11135.

49.     Throughout Shasta County Jail, significant problems exist for people with disabilities with respect to classification, housing, access to programs and services, and physical access barriers.  Defendants systemically fail to effectively evaluate the needs of people with disabilities within the Jail, and fail to meet those needs through appropriate accommodations and physical access.

50.     Systemic issues include, but are not limited to, inappropriate placement and/or security classification of people with mobility disabilities; failure to provide appropriate mobility aids; failure to accommodate the needs of people with mobility disabilities; failure to modify policies and procedures for people with mobility disabilities; failure to remove multiple and pervasive architectural barriers throughout the jails; failure to allow people with mobility disabilities access to vocational, educational,  religious, and other programs and services; failure to have an emergency and/or evacuation policy for people with mobility disabilities; and failure to provide an effective complaint procedure for disability related complaints.

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1062780.01

51.     These violations result from a number of pervasive problems, including, but not limited to the following:

    a.   There is no comprehensive set of policies or procedures for determining appropriate accommodations, modifications or services for prisoners with disabilities;

    b.   People who are identified as having mobility disabilities and who require assistive devices are frequently housed in segregated facilities that provide severely restricted access to the programs and services available in the Jail;

    c.   Architectural barriers are pervasive throughout the Jail.  These include failure to make housing and programming accessible to people with mobility disabilities, as well as a failure to provide emergency evacuation plans for people with mobility disabilities.

**Physical Barriers at the Jail**

52.     None of the cells at the Jail are ADA complaint.

53.     Specifically, none of the cells are accessible to prisoners with mobility disabilities. Specifically, the Jail has no cells designated for use by prisoners with mobility disabilities and none of the cells at the Jail, including those in the Medical Unit, have grab bars to allow prisoners with mobility disabilities to independently and safely use the toilet.

54.     The only shower at the Jail with grab bars is located in the Medical Unit and the grab bars in that shower were installed within the last year, long after this case was initially filed. Prior to that there were no showers at the Jail with grab bars that allowed a prisoner with a mobility disability to shower safely.  None of the showers at the Jail, with the exception of the shower in the Medical Unit, include a shower seat and no shower seats are otherwise made available for prisoners with mobility disabilities to allow them to sit when taking a shower.

55.     Additionally, the showers located on each of the housing units in Level 1, 2, and 3 each have a six to eight inch high lip that must be stepped over in order to access the shower. There are two showers in the entire Jail that do not have this barrier, one of which is located in the Medical Unit and the other in the booking area.  However, transporting prisoners from other units

to the medical or booking area showers takes a significant amount of time, resulting in disabled prisoners being denied regular use of the shower.

56.     For example, after Mr. Jewett fell multiple times in the general housing showers, he was permitted to use the shower in the booking area.  However, after being formally permitted to use these showers, he was regularly denied access to them by some subset of the Doe Defendants.  On average, Mr. Jewett was only permitted to shower two or three times a week despite asking to shower every day.  Additionally, Messrs. Everett, Ackley, and Marquette have all been regularly denied the use of the medical shower and instead forced to shower in showers without grab bars or benches.

57.     Furthermore, the lack of assistive features, such as grab bars in the shower, has directly resulted in further exacerbating permanently disabled persons' disabilities.  For example, Mr. Jewett fell while showering, tearing his meniscus, and permanently injuring his right knee.  This fall was a result of Mr. Jewett being forced—by at least some subset of the Doe Defendants—to use the intake shower, despite the shower not having any assistive devices.  At the time, Mr. Jewett's disability required him to use crutches to walk, or even stand.  While showering, one crutch slipped out from under Mr. Jewett.  Mr. Jewett fell and struck his knee.  The Jail Staff's only response was to laugh and order him to stand.  After it became clear that Mr. Jewett could not stand without assistance, Mr. Jewett was escorted to medical.  At Medical, the nurse asked Mr. Jewett to wiggle his toe.  Mr. Jewett complied, and the Nurse stated that if he could wiggle his toe there was no knee injury.

58.     Several days later the pain in Mr. Jewett's knee increased and its mobility decreased.  Mr. Jewett requested to see the physician's assistant.  The physician assistant determined there was no knee injury.  After several weeks, Mr. Jewett's knee became swollen and more painful.  Mr. Jewett was again informed by medical staff that his knee was not injured, but that he would receive cortisone shots.  Following two rounds of cortisone shots, and no improvement to his knee, Mr. Jewett was sent to an orthopedic surgeon who determined that Mr. Jewett's right knee had a torn meniscus. Throughout this time Mr. Jewett made multiple requests

to the Defendants for medical attention regarding his knee, the overwhelming majority of these requests were either denied or ignored.  Mr. Jewett must now undergo knee replacement surgery.

59.     Likewise, despite Mr. Ackley needing crutches to walk or stand, he has been denied access to the medical shower except on two or three occasions.  Out of fear that a single fall will further disable him, Mr. Ackley gives himself daily sponge baths instead of using the unsafe shower.  When Mr. Ackley does attempt to use the shower, because the shower has no grab bars, he is forced to hold himself up by the shower head.

60.     Prisoners who use assistive devices are also improperly housed on the "upper tier" which is the second floor of the housing unit accessible only by going up a flight of stairs.  A subset of the Doe Defendants caused Mr. Jewett to be housed in a cell on the upper tier despite the fact that he relies on a cane to walk and was supposed to only be housed on lower tiers where he would not have to climb up and down stairs.  Furthermore, Mr. Jewett was forced to walk up and down the stairs to eat his meals, take his medication, use the phone, use the dayroom, and see visitors without the use of his cane.  As a result, Mr. Jewett fell down the stairs on at least two occasions.  Mr. Jewett suffered multiple injuries that exacerbated his disabilities, including injuries to his shoulder, back, neck, leg, and mouth.  On one occasion his fall led to his teeth puncturing his cheek.

61.     Prisoners with mobility disabilities are also routinely improperly housed on the upper bunk.  For example, Mr. Marquette was assigned an upper bunk despite the seizures, caused by his previous traumatic brain injury, and his back injury.  On two separate occasions Mr. Marquette fell off of the upper bunk and onto the cement floor because of a seizure.  One such fall resulted in an injury to his head, vomiting, and an extended period of blurred vision.  This head injury was left untreated by Defendants, despite Mr. Marquette requesting treatment for a concussion.

62.     In addition, the holding, sobering, and safety cells in the intake and transfer unit of the Jail lack grab bars and fail to provide sufficient knee space and clearance to allow a wheelchair user to access the sink and toilet.

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

63.     Additionally, Defendants have failed to put proper policies and practices in place to ensure that people with disabilities are not discriminated against.

64.     For example, despite the existence of a policy that prisoners with disabilities are to be permitted the use of assistive devices while in the Jail, they are regularly denied the use of such devices.  For example, Mr. Everett arrived at the Jail with a cane.  His cane was promptly confiscated.  Despite him asking for his cane during intake and again later while in custody, he was not provided with one.  As a result, he was largely confined to his bed as it was too painful to walk.  Additionally, because he was unable to take the pressure off of his feet while walking, he formed lesions on the soles of his feet because of his diabetes.  These sores went untreated, despite Mr. Everett requesting treatment from Defendants.

65.     Mr. Ackley was also deprived of his crutches upon entering the Jail.  Defendants did not provide crutches to Mr. Ackley, despite frequent requests for them, for over a year.  Because Mr. Ackley did not have his crutches he fell numerous times.  Each time he fell caused his back condition to worsen, and put him at extreme risk of further permanent injury to his spine.  Out of fear that he would suffer further nerve damage to his spine every time he fell, Mr. Ackley was effectively confined to his bed.

66.     Mr. Marquette was also deprived access to his cane by Defendants when he first came to the Jail.  Mr. Marquette requested a cane both during booking and during his initial medical appointment at the Jail.  However, he was denied the use of his cane for weeks.  During this time, he was barely able to walk, and when he did walk he was in extreme pain.  Defendants still deny Mr. Marquette the use of his prescribed back brace and wrist brace, both of which he has also requested on numerous occasions.  Because of being deprived his back brace and wrist brace, both his back and wrist conditions continue to worsen.

67.     Due to the aforementioned pervasive barriers, in combination with erroneous assumptions about the capabilities and legal rights of people with disabilities, individuals with mobility disabilities have little to no access to the vast majority of Defendants' programs and services.  These barriers and erroneous assumptions further lead to prisoners with disabilities being routinely housed in inaccessible cells and being denied the ability to independently and

safely go about daily life activities including going to the bathroom, bathing, using the toilet, and navigating their cells.

68.    This discrimination has a dramatic impact on people with disabilities within the Jail as represented by the experiences of the named Plaintiffs in this matter.

    a.  Mr. Jewett has fallen on multiple occasions, including down a flight of stairs and in the showers, causing him to permanently injure his right knee, suffer tremendous pain, and exacerbate his preexisting permanent disabilities;

    b.  Mr. Marquette suffered a head injury as a result of falling out of the upper bunk;

    c.  Mr. Ackley fell on multiple occasions while deprived of his crutches and is forced to give himself sponge baths as he us unable to shower without the use of grab bars;

    d.  Mr. Everett was effectively confined to his bed while deprived of his cane and formed sores on the soles of his feet because of walking without a cane while suffering from Type II diabetes.

**Involuntary Segregation of Individuals with Disabilities**

69.    Prisoners who use assistive devices are routinely segregated in the Jail's Outpatient Housing Unit ("Medical Unit") which is operated within the Jail by Defendant CFMG in coordination with Defendant County and Defendant SCSD.

70.    Prisoners held in the Medical Unit are held in conditions similar to that of solitary confinement.  They are not given the opportunity to take advantage of the adult schooling program in the Jail, attend religious services in the Jail, or allowed out of their cells for more than one hour a day.  There is also no day room for prisoners held in the Medical Unit and the day room they are sometimes permitted to access, which is down a hallway adjoining the Medical Unit, is significantly smaller than the day rooms on the other levels.  The sole reason given to these prisoners for why they must be held in the Medical Unit is that they require the use of an assistive device, such as a wheelchair, walker, or cane.

71.    Mr. Jewett was held for months at a time in the Medical Unit by a subset of the Doe Defendants.  While there, he was confined to his cell 23 hours a day.  His cell contained only

a bed and a lavatory unit.  During this time, Mr. Jewett was effectively confined to his bed.  While he was sporadically permitted to go to the yard he was unable to utilize this program because both the yard and the path to the yard contained numerous physical barriers, including the fact that there is no place to sit in the yard.  This confinement resulted in degradation of his physical and mental health, including the formation of bed sores.

72.     While Mr. Jewett was confined to his Medical Unit cell, he made numerous requests to a subset of the Doe Defendants to attend religious ceremonies.  These requests were routinely denied.  Mr. Jewett was told that he could instead check out a religious book to read in his cell.  Similarly, Mr. Jewett's requests to attend educational courses were routinely denied.

73.     Mr. Everett and Mr. Marquette have also been housed almost exclusively in the medical unit cells.  During this time, they have only been permitted out of their cells for one hour a day.  While the Jail does offer them an opportunity to go to the yard once a week, they are unable to go because both the yard and the path to the yard contain numerous physical barriers.  One such barrier is the lack of a place for either of them to sit.

74.     Additionally, prisoners in the Medical Unit are sometimes housed in cells without beds and are forced to sleep on thin mats on the floor by at least a subset of the Doe Defendants.  Without beds at the required height, prisoners who use assistive devices are at risk of injuring themselves every time they get in and out of bed.  Mr. Jewett was at times housed in such a cell by a subset of the Doe Defendants.  When housed without a bed, he remained lying on the floor almost all day, as his disabilities made it difficult for him to stand up.

75.     Persons with disabilities were often forced to choose between their health and safety, on one hand, and being allowed to leave the highly restrictive conditions found within the Medical Unit, on the other.  For example, disabled prisoners were occasionally given the paradoxical choice between giving up their assistive devices (such as their cane or prosthetic) and being permitted to take advantage of the less restrictive general population environment or keep their assistive device, but remain in the Medical Unit.  Mr. Jewett was given just such a choice—by the Doe Defendants—and was forced to choose between his health and greater liberty.

1062780.01

76.     Furthermore, when the Medical Unit has been full, persons with mobility disabilities have had their assistive devices confiscated and were placed in general housing, despite the housing not being accessible.

77.     All of these conditions exist despite a letter from Jail Administration to "Custody Staff," on or about February 27, 2014, indicating that prisoners with assistive devices, such as prosthetics and canes, will be housed in general population.  The policy, as described in the letter, has not been substantially followed.  Prisoners with assistive devices remain either largely confined to the Medical Unit or deprived of their assistive devices and housed in general population at a significant risk to their health and safety.

**Religious Services and Educational Programs**

78.     The Jail frequently denies individuals with mobility disabilities access to medical devices and equipment necessary for them to participate in Jail programs and services.  For example, Jail Staff have denied prisoners with disabilities access to canes while in general population, despite the fact that these prisoners require canes in order to safely and independently navigate the Jail.  In one such instance, when Mr. Jewett was permitted to go to church, his cane was taken away from him upon.  This prevented Mr. Jewett from leaving his seat during the service, even when the service required him to stand.

79.     Furthermore, despite written reminders sent from Jail Administration to Custody Staff informing the Custody Staff that all prisoners are to be afforded equal opportunity to participate in programs and services, including prisoners with disabilities and those confined to the Medical Unit, disabled prisoners continued to be regularly denied equal access to these programs and services.  In fact, prisoners with mobility disabilities are regularly not informed of what educational programming is even available to them.

**Grievances and Retaliation**

80.     Individuals with disabilities housed at the Jail are not only often misinformed or not informed about the Jail's grievance process, but are retaliated against by Jail Staff when they do use the grievance process.  This lack of information and constant threat of retaliation renders the grievance procedure ineffective and unavailable to them.

81.     It is regular practice at the Jail to not provide prisoners with instructions on how to file a grievance when prisoners with mobility disabilities are initially booked.  For example Messrs., Everett, Ackley, Jewett, and Marquette were all not provided a prisoner handbook when they were initially booked into the Jail.  Furthermore, Mr. Ackley was denied a paper copy of the handbook for over nine months, despite requesting one in writing on multiple occasions.  Additionally, even when a prisoner is informed of how to file a grievance, prisoners are routinely not informed that an appeal process exists for denied grievances, let alone the method to file such an appeal.

82.     Furthermore, disabled prisoners are regularly denied grievance forms.  On a consistent basis Messrs. Jewett, Everett, Ackley, and Marquette were denied grievance forms by at least a subset of Due defendants.  For example, Mr. Marquette has been denied grievance forms from guards, even though on at least on occasion the guard had multiple blank grievance forms in his pocket.  Jail Staff have also stated to prisoners that they will not provide grievance forms to them because the forms are better off used to "wipe their ass with."

83.     When individuals with disabilities are able to file a grievance they face retaliation from Jail Staff.  This type of retaliation deters prisoners with disabilities from exercising their right to file a grievance with the Jail regarding the barriers they experience due to their disabilities.  Prisoner's food is regularly tainted and inedible on days following the filling of grievances by a prisoner.  Additionally, Mr. Jewett was informed that his written complaints about not being allowed to use the day room would result in him being disciplined by a subset of the Doe Defendants.

84.     For example, Mr. Jewett was retaliated against by a subset of the Doe Defendants in the following ways for both asking for and/or submitting a grievance:

    a.   Written up for a rule infraction;

    b.   Cell searches;

    c.   Verbal abuse;

    d.   Body searches;

    e.   Denial of medication;

1       f.  Being placed in solitary confinement;

2       g.  Destroying his cane;

3       h.  Removal of his cane; and

4       i.  Forced to use the intake shower.

5       85.   Prisoners are even retaliated against for meeting with counsel.  For example, after

6 Mr. Marquette met with legal counsel, he was immediately moved from a medical cell to

7 administrative segregation.  Mr. Marquette requested to know why he was being placed in the

8 "hole" but Jail Staff refused to inform him of the reason.  Mr. Marquette then asked for a

9 grievance form, which was also denied.  Jail Staff then proceeded to deny him his cancer

10 medication.  The same day Mr. Marquette met with his attorney he had undergone his last round

11 of chemotherapy; the denial of Mr. Marquette's cancer medication put him at a higher risk of

12 relapse.  When prisoners are retaliated against for meeting with their attorneys, it renders the

13 prisons entire grievance system ineffective.

14 **Exhaustion of Administrative Avenues**

15       86.   Mr. Jewett has filed administrative complaints with the Jail in compliance with the

16 Jail's grievance policies and has exhausted the procedures, including all appeals, for such

17 administrative complaints.  Defendants have been on notice about these conditions for a

18 considerable amount of time, and have been specifically on notice about the issues raised in this

19 lawsuit since it was initially filed on May 6, 2013.

20       87.   Plaintiff Glen Harold Everett has either filed administrative complaints with the

21 Jail in compliance with the Jail's grievance policies and has exhausted the procedures, including

22 all appeals, for such administrative complaints, or has been denied access to forms necessary to

23 file grievances with the Jail.  Defendants have been on notice about these conditions for a

24 considerable amount of time, and have been specifically on notice about the issues raised in this

25 lawsuit since it was initially filed on May 6, 2013.

26       88.   Plaintiff Michael Donald Ackley has either filed administrative complaints with

27 the Jail in compliance with the Jail's grievance policies and has exhausted the procedures,

28 including all appeals, for such administrative complaints, or has been denied access to forms

necessary to file grievances with the Jail.  Defendants have been on notice about these conditions for a considerable amount of time, and have been specifically on notice about the issues raised in this lawsuit since it was initially filed on May 6, 2013.

89.     Plaintiff H. Robert Marquette has either filed administrative complaints with the Jail in compliance with the Jail's grievance policies and has exhausted the procedures, including all appeals, for such administrative complaints, or has been denied access to forms necessary to file grievances with the Jail.  Defendants have been on notice about these conditions for a considerable amount of time, and have been specifically on notice about the issues raised in this lawsuit since it was initially filed on May 6, 2013.

90.     Plaintiffs therefore seek injunctive relief requiring Defendants to ensure compliance with the ADA and other laws prohibiting discrimination against individuals with disabilities.

### CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action individually, and on behalf of all present and future prisoners or detainees with mobility disabilities who are or will be held within the Shasta County Jail, as a class action under Rule 23 of the Federal Rule of Civil Procedure.

92.     The class consists of all present and future detainees and prisoners with mobility disabilities who are or will be held at the Shasta County Jail.

93.     Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have failed and continue to fail to comply with the ADA, the Rehabilitation Act, and analogous state statutes.

94.     Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have not adopted and do not enforce appropriate policies and procedures to ensure that the County, SCSD, and CFMG are in compliance with these statutes to ensure nondiscrimination against persons with disabilities and equal access to programs, services, and activities for persons with disabilities.

95.     Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have failed and continue to fail to provide SCSD officers and employees with appropriate training regarding their legal obligations under relevant federal and state statutes.

96.     Plaintiffs and the class they represent are informed, believe, and thereon allege that Defendants have failed and continue to fail to provide CFMG employees with appropriate training and supervision regarding their legal obligations under relevant federal and state statutes.

97.     The violations of the ADA, the Rehabilitation Act, and related federal and California State statutes set forth in detail have injured all members of the proposed class and violated their rights.

98.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

    a.  The class is so numerous that it would be impractical to bring all class members before the Court;

    b.  There are questions of law and fact which are common to the class;

    c.  The named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the class;

    d.  The named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are very experienced in law reform class actions and the disability rights issues in this case;

    e.  Defendants have acted or refused to act on grounds that are generally applicable to the class;

    f.  The questions of law and fact which are common to the class predominate over individual questions; and

    g.  A class action is superior to other available means of resolving this controversy.

99.     The common questions of law and fact, shared by the named Plaintiffs and all class members, include:

    a.  Whether Defendants are violating Title II of the ADA, 42 U.S.C. sections 12131, *et seq.*, by failing to make their programs, services and activities accessible to and

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1 useable by persons with disabilities, and otherwise discriminating against persons

2 with disabilities, as set forth above;

3      b.    Whether Defendants are violating Section 504 of the Rehabilitation Act, 29 U.S.C.

4         § 794 *et seq*., by failing to make their programs, services and activities accessible

5         to and useable by persons with disabilities, and otherwise discriminating against

6         people with disabilities, as set forth above.

7      c.    Whether Defendants are violating California Government Code Section 11135 (a),

8         which prohibits denial of benefits to persons with disabilities of any program or

9         activity that is funded directly by the state or receives any financial assistance from

10         the state.

11      d.    Whether Defendants are violating California Civil Code § 51 *et seq*., by failing to

12         provide full and equal access to people with disabilities.

13      e.    Whether Defendants are violating California Government Code § 4450, *et seq*., by

14         failing to provide full and equal access to persons with disabilities.

15      100.    The class is believed to be so numerous that joinder of all members is

16 impracticable.  The prisoner population within the Shasta County Jail changes constantly as

17 prisoners and detainees cycle in and out of the Jail.  Additionally, Plaintiffs are informed and

18 believes that in 2013 approximately eleven thousand prisoners were booked into the jail at

19 various points in time over the course of that year.  If that number stayed relatively consistent

20 over the course of the following years covering applicable statutes of limitations and class period,

21 if even one percent of prisoners suffered from mobility disabilities, the number of disabled

22 persons affected would be in the hundreds.  The exact figures regarding the total number of

23 persons with disabilities housed in the Jail are in the possession and control of Defendants.

24      101.    Plaintiffs contemplate the eventual issuance of notice to the proposed class

25 members that would set forth the subject and nature of the instant action.  Defendants' records

26 may be used for assistance in the preparation of such notices.  To the extent that any further

27 notices may be required, Plaintiffs contemplate the use of additional media and/or mailings.

28

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1062780.01

## FIRST CLAIM FOR RELIEF
### (Section 504 of the Rehabilitation Act
### 29 U.S.C. § 794 *et seq.*)

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendants SHASTA COUNTY SHERIFF'S DEPARTMENT, TOM BOSENKO, SHASTA COUNTY, and CALIFORNIA FORENSIC MEDICAL GROUP**

102.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

103.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

104.    Each Plaintiff is at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because they have a physical impairment that substantially limits one or more of their major life activities.

105.    Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to prisoners at the Shasta County Jail facility.

106.    At all times relevant to this action, Defendants were recipients of Federal funding within the meaning of the Rehabilitation Act.

107.    The Department of Justice ("DOJ") is charged under Executive Order 12250 with coordinating the implementation of Section 504 of the Rehabilitation Act of 1973. 28 C.F.R. § 41.1.

108.    In providing any aid, benefit, or service, a recipient of federal financial assistance "may not . . . [d]eny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," or "[o]therwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others[.]" 45 C.F.R. § 84.4(b)(1)(i), (ii), (iii), and (vii).

109.    Defendants use criteria and methods of administration that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Jail's program with respect to persons with mobility disabilities and that subject persons with mobility disabilities to discrimination in violation of 45 C.F.R. § 84.4(b)(4)(i), (ii).

110.    Defendants' policies, procedures, and practices exclude persons with mobility disabilities from the Jail's program and discriminate against them solely on account of their disabilities, in violation of Section 504 and the regulations promulgated pursuant thereto. Further, Defendants systematically fail and refuse to offer reasonable modifications and accommodations for individuals with mobility disabilities.

111.    Defendants' policies, procedures, and practices have resulted in, or threaten to result in, discrimination against individuals with mobility disabilities in their unlawful exclusion from participation in, and denial of benefits of, the Defendants' programs, services, and activities.

112.    Plaintiffs are informed, believe, and based thereon allege that Defendants committed the acts and omissions alleged herein with intent and/or reckless disregard of the rights of Plaintiffs.  It is also alleged that the Defendants have violated the Act by providing substandard accommodations or refusing to provide Plaintiffs with reasonable accommodations for their disabilities.

113.    As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer, hardship, injuries, and physical and mental conditions due to Defendants' failures to address accommodations, modifications, services, and access required for their disabilities.

114.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies.  Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

115.    Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiffs pray for judgment as set forth below.

**SECOND CLAIM FOR RELIEF**
**(Title II of the Americans with Disabilities Act**
**42 U.S.C. §12101 *et seq.*)**

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendants SHASTA COUNTY SHERIFF'S DEPARTMENT, TOM BOSENKO, SHASTA COUNTY, and CALIFORNIA FORENSIC MEDICAL GROUP**

116.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

117.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

118.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

119.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

120.    At all times relevant to this action, Defendants were each a "public entity" within the meaning of the ADA under 42 U.S.C. § 12131(1).

121.    The ADA defines a qualified individual with a disability as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A), and 28 C.F.R. § 36.104. Plaintiffs Jewett, Everett, Ackley and Marquette are qualified individuals with disabilities within the meaning of the ADA and are substantially limited in the major life activities of walking, standing, lifting, and/or bending.

24

122.    Congress directed the DOJ to write regulations implementing Title II's prohibition against discrimination.  42 U.S.C. § 12134.  Pursuant to this mandate, the DOJ has issued regulations defining the forms of discrimination prohibited by Title II of the ADA.  28 C.F.R. §§ 35.101 *et. seq.*

123.    Defendants County and SCSD are legally responsible for all violations of the ADA committed by Defendant CFMG in the course of performing its duties under its contractual arrangement with Defendants County and SCSD to provide medical and mental health care services to prisoners in the Jail.  *See* 28 C.F.R. § 35.130(b)(1).

124.    Defendants have excluded plaintiffs from participation in the services, programs and activities of the Shasta County Jail facilities, and have denied them the rights and benefits accorded to other prisoners, solely by reason of their disabilities in violation of the ADA.  In addition, the Defendants have violated the ADA by failing or refusing to provide Plaintiffs with reasonable accommodations and other services related to their disabilities.  *See generally* 28 C.F.R. § 35.130.

125.    Defendants are mandated to operate each program, service, or activity so that, "when viewed in its entirety, [it] is readily accessible to and useable by individuals with disabilities."  28 C.F.R. §§ 35.150(a); *see also* 28 C.F.R. §§35.149 & 35.151.  Defendants continue to violate the ADA by maintaining inaccessible facilities that deny people with disabilities access to programs, services, and activities.

126.    Defendants have failed to make reasonable modifications to their policies, practices, and procedures which affect prisoners with disabilities at the Jail.  Defendants' failure to make such reasonable modifications has resulted in discrimination against individuals on the basis of disability in violation of 28 C.F.R. § 35.130(b)(7).

127.    Defendants use criteria and methods of administration that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Jail with respect to persons with disabilities in violation of 28 C.F.R. § 35.130(b)(3)(ii).

128.    In providing the aid, benefits, and services associated with the Jail, Defendants deny individuals with mobility disabilities the equal opportunity to participate in or benefit from

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

the aid, benefits, or services of the Jail's program.  28 C.F.R. § 35.130(b)(l)(i).  Further, Defendants provide individuals with mobility disabilities an aid, benefit, or service that is not as effective in affording the same opportunity to gain the same benefit as provided to persons without disabilities.  28 C.F.R. § 35.130(b)(1)(iii).

129.    Defendants similarly impose or apply eligibility criteria that screen out or tend to screen out individuals with mobility disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the program being offered.  28 C.F.R. § 35.130(b)(8).

130.    Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have failed and continue to fail to:

j.    Provide necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities to participate on an equal basis in programs, services, and activities.

k.    Develop and enforce procedures for the SCSD to ensure provision of necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities to participate on an equal basis in programs, services, and activities.

l.    Train and supervise the jail personnel to provide necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities to participate on an equal basis in programs, services, and activities.

131.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, hardship, injuries, and deteriorating physical and mental conditions, due to Defendants' failures to address accommodations, modifications, services, and access required for Plaintiffs' disabilities.

132.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm and, thus, immediate relief is appropriate.

Case No. 2:13-cv-0882 MCE AC (PC)

133.    Pursuant to the remedies, procedure, and rights set forth in 42 U.S.C. §§ 12188 and 12205 Plaintiffs pray for judgment as set forth below.

**THIRD CLAIM FOR RELIEF**
**(Title III of the Americans with Disabilities Act**
**42 U.S.C. §12181 *et seq.*)**

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendant CALIFORNIA FORENSIC MEDICAL GROUP**

134.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

135.    Title III of the ADA ("Title III") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.

136.    Congress directed the Attorney General to write regulations implementing Title III's prohibition against discrimination.  42 U.S.C. § 12186(b).  Pursuant to this mandate, the Department of Justice has issued regulations defining the forms of discrimination prohibited by Title III of the ADA, which are contained at 28 C.F.R. §§ 36.101 et.  seq.

137.    The ADA defines a qualified individual with a disability as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(1)(A), (2)(A); 28 C.F.R. §36.104.  Plaintiffs Jewett, Everett, Ackley, and Marquette are qualified individuals with disabilities within the meaning of the ADA and are substantially limited in the major life activities of walking, standing, lifting, and/or bending.

138.    Defendant CFMG is not a governmental entity or a department or other instrumentality of a State or local government and is therefore a "private entit[y]" pursuant to 42 U.S.C. § 12181(6).

1062780.01

139.   Defendant CFMG is a public accommodation that owns, leases, leases to, or operates a professional office of a health care provider, hospital, or other service establishment within the meaning of 42 U.S.C. § 12181(7)(F) and 28 C.F.R. § 36.104.

140.   Title III provides that it "shall be discriminatory to subject an individual on the basis of a disability . . . , directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."  42 U.S.C. § 12182(b)(1)(A)(i).

141.   Title III also prohibits private entities from affording an individual with a disability "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals" as well as from providing an individual with a disability with "a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a[n] . . .opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(ii)-(iii).

142.   Individuals with disabilities must also be provided with goods, services, facilities, advantages, and accommodations "in the most integrated setting appropriate" to the individual's needs and an individual with a disability "shall not be denied the opportunity to participate in such programs or activities that are not separate or different."  42 U.S.C. § 12182(B), (C )

143.   Discrimination under Title III of the ADA is defined to include the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the such goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).

144.   By its policies and practices described above, Defendant CFMG violates Title III of the ADA, 42 U.S.C. §§ 12181-12189, by discriminating against individuals with disabilities on

1062780.01

the basis of disability, in the full and equal enjoyment of CFMG's goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(a); 28 C.F.R., Part 36.

145.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, hardship, injuries, and deteriorating physical and mental conditions, due to Defendant's failures to address accommodations, modifications, services, and access required for Plaintiffs' disabilities.

146.    Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Moreover, as a result of Defendants' actions, Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

147.    Pursuant to the remedies, procedure, and rights set forth in 42 U.S.C. §§ 12133 and 12205 Plaintiffs pray for judgment as set forth below.

## FOURTH CLAIM FOR RELIEF
### (California Government Code § 11135)

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendants SHASTA COUNTY SHERIFF'S DEPARTMENT, TOM BOSENKO, SHASTA COUNTY, and CALIFORNIA FORENSIC MEDICAL GROUP**

148.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

149.    Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that . . . is funded directly by the state, or receives any financial assistance from the state."

150.    Plaintiffs and the class they represent are all persons with disabilities within the meaning of California Government Code § 11135.

151.    Defendants receive financial assistance from the State of California to operate the Jail and to pay for the programs and services provided therein.

152.    Through their acts and omissions described herein, Defendants have violated and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs and the

1062780.01

class the benefits of Defendants' programs and activities and unlawfully subjecting them to discrimination.

153.    Defendants have also discriminated on the basis of disability, in violation of California Government Code § 11135, by constructing, altering or repairing parts of the Jail in a manner that violates the accessibility requirements of Title 24 of the California Building Standards Code and California Government Code § 4450.

154.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer hardship, injuries, and deteriorating physical and mental conditions, due to Defendants' failures to address accommodations, modifications, services, and access required for Plaintiffs' disabilities.

155.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Plaintiffs have no adequate remedy at law.  Unless the relief requested herein is granted, Defendants will continue to discriminate against prisoners with disabilities by denying them access to, and the benefits of, Defendants' facilities, programs, services, and activities.  Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

156.    Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

157.    Pursuant to the remedies, procedure, and rights set forth in Section 11135 Plaintiffs pray for judgment as set forth below.

**FIFTH CLAIM FOR RELIEF**
**(Unruh Civil Rights Act**
**California Civil Code § 51 *et seq.*)**

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendant CALIFORNIA FORENSIC MEDICAL GROUP**

158.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

159.    Through the acts and omissions described herein, Defendants have violated California Civil Code § 51(b) which provides in pertinent part that "All persons within the

jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

160.   Pursuant to California Civil Code § 51(f), a violation of the ADA also constitutes a violation of California Civil Code §51 *et seq*.

161.   CFMG is a "business establishment" within the meaning of California Civil Code §51 *et seq*.

162.   Through the acts and omissions described herein, Defendants are violating California Civil Code § 51 *et seq*. by denying Plaintiffs full and equal access to its program comparable to the access that it offers to others.

163.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, hardship, injuries, and deteriorating physical and mental conditions, due to Defendant CFMG's failures to address accommodations, modifications, services, and access required for Plaintiffs' disabilities.

164.   Because Defendant CFMG's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Moreover, as a result of Defendant's actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.

165.   Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

166.   Pursuant to the remedies, procedures and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

### SIXTH CLAIM FOR RELIEF
**(California Government Code § 4450, *et seq.*)**

**By Plaintiffs JEWETT, EVERETT, ACKLEY and MARQUETTE, the Plaintiff Class and LSPC against Defendants SHASTA COUNTY SHERIFF'S DEPARTMENT, TOM BOSENKO, SHASTA COUNTY, and CALIFORNIA FORENSIC MEDICAL GROUP**

167.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

168.     Defendants' facilities are publicly funded and intended for use by the public within the meaning of California Government Code § 4450, *et seq.* Defendants have constructed, altered, installed, maintained and/or operated its facilities in violation of disability access requirements under California Government Code § 4450, *et seq.*, and regulations implemented pursuant thereto.  The aforementioned acts and omissions of the Defendants constitute a denial of equal access to and use of Defendants' facilities.

169.     Defendants' failure to provide full and equal access to their facilities has caused Plaintiffs to suffer deprivation of their civil rights.

170.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation, hardship and anxiety, as well as deteriorating physical conditions, due to Defendants' failures to address accommodations, modifications, services, and access required for Plaintiffs' disabilities.

171.     Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.  Moreover, as a result of Defendants' actions Plaintiffs are suffering irreparable harm, and thus immediate relief is appropriate.  Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

## SEVENTH CLAIM FOR RELIEF
### (Violation of California Civil Code § 52.1 (Bane Act))

### By Plaintiffs JEWETT against ALL DEFENDANTS

172.     Mr. Jewett incorporates by reference all preceding paragraphs.

173.     Does 1–25 interfered with Mr. Jewett's rights under the Constitution and laws of the United States and the Constitution and laws of the State of California, by threatening, intimidating, and committing violent acts against Mr. Jewett in the course of his incarceration at the Jail.

174.     Mr. Jewett reasonably believed that if he exercised his statutory or constitutional rights, Does 1–25 would in fact commit violence against him.

175.     The conduct of Does 1–25 caused Mr. Jewett emotional and physical harm.

1062780.01

176. Does 1–25 acted intentionally, deliberately, spitefully, willfully, maliciously, in bad faith, and in reckless disregard of Mr. Jewett's rights.

177. Defendants' above-described conduct interfered with Mr. Jewett's exercise and enjoyment of rights secured by the Constitutions and laws of the United States and the State of California, in violation of California Civil Code § 52.1.

178. Defendants Shasta County Sheriff's Department, Tom Bosenko, and Shasta County are derivatively liable for such violation of California Civil Code § 52.1(b) pursuant to California Government Code § 815.2.

179. Accordingly, Mr. Jewett seeks compensatory (actual) and exemplary damages, penalties, and injunctive relief, pursuant to California Civil Code §§ 52.1(b) and 52, in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to California Civil Code § 52.1(h), against Does 1–25, the Shasta County Sheriff's Department, Tom Bosenko, and Shasta County.

## EIGHTH CLAIM FOR RELIEF
### (Additional Claims of Named Plaintiff Everett Jewett)

**By Mr. JEWETT against Defendants SHASTA COUNTY SHERIFF'S DEPARTMENT, TOM BOSENKO, SHASTA COUNTY, and CALIFORNIA FORENSIC MEDICAL GROUP**

180. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

181. 29 U.S.C. § 794a sets forth the remedies for a violation of the Rehabilitation Act, including monetary damages. Defendants County and SCSD were on notice of the need for accommodations by Mr. Jewett and were deliberately indifferent to that need as evidenced by their failure to ensure that their facilities are physically accessible and failure to adopt policies and procedures to ensure accommodations are provided in a timely manner to people with mobility disabilities. Therefore, Mr. Jewett is entitled to monetary damages pursuant to 29 U.S.C. § 794a.

1062780.01

182.    Named Mr. Jewett is additionally entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense he has and continued to experience in violation of the Unruh Act. Cal. Civ. Code § 52(b).

183.    Pursuant to 42 U.S.C. § 12133, the remedies set forth in 29 U.S.C. § 794a are the remedies available for a violation of Title II of the ADA, including monetary damages. Defendants County and SCSD were on notice of the need for accommodations by Mr. Jewett and were deliberately indifferent to that need as evidenced by their failure to ensure that their facilities are physically accessible and failure to adopt policies and procedures to ensure accommodations are provided in a timely manner to people with mobility disabilities. Therefore, Mr. Jewett is entitled to monetary damages pursuant to 42 U.S.C. § 12133.

184.    California Government Code § 11135 adopts the same remedies set forth in Title II of the ADA, including monetary damages. Defendants were on notice of the need for accommodations by Mr. Jewett and were deliberately indifferent to that need as evidenced by their failure to ensure that their facilities are physically accessible and failure to adopt policies and procedures to ensure accommodations are provided in a timely manner to people with mobility disabilities.  Therefore, Mr. Jewett is entitled to monetary damages pursuant to California Government Code § 11135.

185.    California Civil Code §52(a) provides that, "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51…is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)…" Pursuant to California Civil Code § 52, Mr. Jewett is entitled to at least statutory minimum pursuant to California Civil Code § 52 for each and every offense.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment as follows:

1.    A judicial declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Section 504 of the Rehabilitation Act, and California Code

1062780.01

§§ 11135 and 4450.

2. A declaration that Defendants Shasta County Sheriff's Department, Tom Bosenko, and Shasta County's conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act.

3. A declaration that Defendant California Forensic Medical Group's conduct as alleged herein has violated, and continues to violate, Title III of the Americans with Disabilities Act and the Unruh Civil Rights Act (California Civil Code § 51 *et seq*).

4. Enjoin Defendants from violating Section 504 of the Rehabilitation Act, [and] California Code §§ 11135 and 4450.

5. Enjoin Defendants Shasta County Sheriff's Department, Tom Bosenko, and Shasta County from violating Title II of the Americans with Disabilities Act.

6. Enjoin Defendant California Forensic Medical Group from violating Title III of the Americans with Disabilities Act and the Unruh Civil Rights Act (California Civil Code § 51 *et seq*).

7. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future, absent continuing jurisdiction;

8. Award Mr. Jewett damages in an amount to be determined by proof, including all applicable statutory damages;

9. Award Plaintiffs' attorneys' fees and costs, as provided by statute; and

10. Such other relief as the Court finds just and proper.

//
//
//
//
//
//

1062780.01

Dated:  May 25, 2016                    KEKER & VAN NEST LLP


                                By:     /s/ Steven P. Ragland
                                        STEVEN P. RAGLAND
                                        AJAY S. KRISHNAN
                                        TAYLOR GOOCH

Dated:  May 25, 2016                    DISABILITY RIGHTS LEGAL CENTER


                                By:
                                        /s/ Kara Janssen (as authorized on May 25, 2016)
                                        KARA JANSSEN
                                        ANNA RIVERA

Dated:  May 25, 2016                    ATABECK & ASSOCIATES, P.C.


                                By:
                                        /s/ Jon A. Atabeck (as authorized on May 25, 2016)
                                        JON A. ATABECK

                                        Attorneys for Plaintiffs
                                        EVERETT JEWETT, LEGAL SERVICES FOR
                                        PRISONERS WITH CHILDREN, GLEN HAROLD
                                        EVERETT, MICHAEL DONALD ACKLEY,
                                        HAROLD ROBERT MARQUETTE

FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
Case No. 2:13-cv-0882 MCE AC (PC)

1062780.01