1 | KEKER & VAN NEST LLP
STEVEN P. RAGLAND - # 221076
2 | sragland@kvn.com
AJAY S. KRISHNAN - # 222476
3 | akrishnan@kvn.com
TAYLOR GOOCH - # 294282
4 | tgooch@kvn.com
633 Battery Street
5 | San Francisco, CA 94111-1809
Telephone:     415 391 5400
6 |
ATABEK & ASSOCIATES, P.C.
7 | JON A. ATABEK, ESQ. - # 269497
jatabek@atabeklaw.com
8 | 300 Spectrum Center Dr., Ste.400
Irvine, CA 92618
9 | Telephone:     213 394 5943

10 | DISABILITY RIGHTS LEGAL CENTER
MARONEL BARAJAS - #242044
11 | maronel.barajas@drlcenter.org
ANNA RIVERA - # 239601
12 | anna.rivera@drlcenter.org
350 S. Grand Avenue, Suite 1520
13 | Los Angeles, CA 90071
Telephone:     213 736 1031
14 |
Attorneys for Plaintiffs
15 | EVERETT JEWETT, LEGAL SERVICES FOR PRISONERS
WITH CHILDREN, GLEN HAROLD EVERETT, MICHAEL
16 | DONALD ACKLEY, HAROLD ROBERT MARQUETTE

17 | UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
18 |

19 | EVERETT JEWETT, LEGAL SERVICES | Case No. 2:13-cv-0882 MCE AC (PC)
FOR PRISONERS WITH CHILDREN,
GLEN HAROLD EVERETT, MICHAEL | **PLAINTIFFS' NOTICE OF MOTION AND**
20 | DONALD ACKLEY, HAROLD | **MOTION FOR CLASS CERTIFICATION;**
ROBERT MARQUETTE, on behalf of | **MEMORANDUM OF POINTS AND**
21 | themselves and all others similarly | **AUTHORITIES IN SUPPORT THEREOF**
situated,
22 |              Plaintiffs, | Date:       March 8, 2017
v. | Time:       10:00 a.m.
23 | | Dept.:      Courtroom 26, 8th Floor
SHASTA COUNTY SHERIFF'S | Judge:      Hon. Allison Claire
24 | DEPARTMENT, A PUBLIC ENTITY;
TOM BOSENKO, as Sheriff of the Shasta | Date Filed: May 6, 2013
25 | County; SHASTA COUNTY, a public
entity; and CALIFORNIA FORENSIC | Trial Date:
26 | MEDICAL GROUP, INC. a private entity;
and DOES 1 through 25, in their
27 | individual capacities,
              Defendants.
28 |

1114202

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   FACTS ..........................................................................................................................3

    A.    The Shasta County Jail Houses and Processes Numerous Detainees with Mobility Disabilities Every Year. ...............................................................3

    B.    The Shasta County Jail Offers a Wide Array of Programs, Services and Activities to Non-Disabled Detainees. ..................................................3

    C.    Defendants' Policies and Practices are Inadequate and Discriminatory to All Prisoners with Mobility Disabilities. .................................................4

        1.    Defendants have not even complied with state and federal self-evaluation and transition planning requirements. ..........................................4

        2.    Defendants lack the system-wide policies and procedures necessary to identify and accommodate prisoners with mobility disabilities. .............5

        3.    Defendants fail to provide access to services and programs for prisoners with mobility disabilities and fail to remove multiple and pervasive barriers. ..................................................................6

        4.    Defendants fail to modify policies and procedures for people with disabilities and have failed to implement a functional complaint procedure. ...............................................................................7

    D.    The Discrimination Faced by Detainees with Mobility Disabilities is Caused by Shasta County Jail's Policies, Practices, and Procedures (or Lack Thereof) ...............................................................................7

    E.    The Named Representatives and the Proposed Plaintiff Class are Subject to Similar Discriminatory Consequences Because of Defendants Failed Policies and Practices, Including Physical Barriers in the Jail. .....................8

        1.    Everett Jewett. ......................................................................8

        2.    Glen Harold Everett. .............................................................8

        3.    Michael Don Ackley. ............................................................9

        4.    Legal Services for Prisoners with Children. ................................9

III.   ARGUMENT ...............................................................................................................10

    A.    Legal Standards for Class Certification. ............................................10

    B.    Plaintiffs' Claims and the Defendants' Defenses are Inherently Systemic, and Therefore Appropriate for Resolution on a Class-Wide Basis ...................11

    C.    Plaintiffs Meet the Requirements of Rule 23(a). ..................................12

1114202

1.     Defendants have stipulated that numerosity is satisfied because there are far too many class members to make joinder practicable. ..........12

2.     Commonality is met because the lawsuit challenges system-wide practices and policies that affect all detainees with mobility disabilities within the Jail............................................................................14

       a.     Common Questions of Law ........................................................16

       b.     Common Questions of Fact ........................................................16

3.     The named representatives' claims are typical of the class. .....................16

4.     The named representatives and their counsel will fairly and adequately protect the interests of the class..............................................18

       a.     Named Representatives...............................................................18

       b.     Plaintiffs' Counsel .....................................................................18

       D.     The Conditions of Rule 23(b)(2) are Met. ............................................................19

IV.    CONCLUSION......................................................................................................20

1114202

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*
    197 F.R.D. 522 (S.D. Fla. 2000)..................................................................... 12

*Ali v. Ashcroft*
    213 F.R.D. 390 (W.D. Wash. 2003) ............................................................... 14

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997).......................................................................................... 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*
    133 S. Ct. 1184 (2013) ..................................................................................... 11

*Ansoumana v. Gristede's Operating Corp.*
    201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................... 13

*Armstrong v. Davis*
    275 F.3d 849 (9th Cir. 2001) ............................................................ 10, 11, 15, 17

*Baby Neal for & by Kanter v. Casey*
    43 F.3d 48 (3d Cir. 1994) ........................................................................... 11, 20

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*
    249 F.R.D. 334 (N.D. Cal. 2008)........................................................... 2, 11, 13

*Chastain v. Cam*
    No. 3:13-CV-01802-SI, 2016 WL 1572542 (D. Or. Apr. 19, 2016) ...................... 13

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974).......................................................................................... 11

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) ............................................................ 14, 17, 18

*Evon v. Law Offices of Sidney Mickell*
    688 F.3d 1015 (9th Cir. 2012) ......................................................................... 18

*Gen. Tel. Co. of Sw. v. Falcon*
    457 U.S. 147 (1982).......................................................................................... 17

*Gray v. Golden Gate Nat. Recreational Area*
    279 F.R.D. 501 (N.D. Cal. 2011)..................................................................... 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ......................................................................... 17

*Harris v. Palm Springs Alpine Estates, Inc.*
    329 F.2d 909 (9th Cir. 1964) ........................................................................... 12

*Henderson v. Thomas*
    289 F.R.D. 506 (M.D. Ala. 2012) ................................................................... 14

iii

1114202

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    308 F.R.D. 606 (N.D. Cal. 2015) ................................................................... 13

*Jackson v. Danberg*
    240 F.R.D. 145 (D. Del. 2007) ....................................................................... 14

*Jordan v. County of Los Angeles*
    669 F.2d 1311 (9th Cir. 1982) ....................................................................... 19

*Kincaid v. City of Fresno*
    244 F.R.D. 597 (E.D. Cal. 2007) ................................................................... 15

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*
    303 F.R.D. 337 (E.D. Cal. 2014) ................................................................... 13

*Parsons v. Ryan*
    754 F.3d 657 (9th Cir. 2014) .................................................................. 14, 20

*Pederson v. La. State Univ.*
    213 F.3d 858 (5th Cir. 2000) ......................................................................... 14

*Preap v. Johnson*
    303 F.R.D. 566 (N.D. Cal. 2014) ................................................................... 19

*Sueoka v. United States*
    101 F. App'x 649 (9th Cir. 2004) ................................................................... 13

*Valley View Health Care, Inc. v. Chapman*
    992 F. Supp. 2d 1016 (E.D. Cal. 2014) ......................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ................................................................ 10, 14, 15, 16

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) .............................................................. 11, 12, 20

*Wang v. Chinese Daily News, Inc.*
    737 F.3d 538 (9th Cir. 2013) ......................................................................... 15

*Wolin v. Jaguar Land Rover N. Am. LLC*
    617 F.3d 1168 (9th Cir. 2010) ....................................................................... 17

**Federal Statutes**

29 U.S.C. § 705(20)(B) ......................................................................................... 8, 9

29 U.S.C. § 794 ......................................................................................................... 4

42 U.S.C. § 12131(2) ............................................................................................. 8, 9

42 U.S.C. § 12132 ..................................................................................................... 4

42 U.S.C. §§ 12131-12165 ............................................................................... *passim*

iv

1114202

**State Statutes**

Cal. Civ. Code § 51 ........................................................................................................ 1, 16

Cal. Govt. Code § 4450 ................................................................................................... 1, 16

Cal. Govt. Code § 11135 ................................................................................................. 1, 16

Cal. Govt. Code § 12926(m) ............................................................................................. 8, 9

**Federal Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 1, 11

Fed. R. Civ. P. 23(a) ................................................................................................. 10, 12, 14

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 14

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 18

Fed. R. Civ. P. 23(b) ......................................................................................................... 10

Fed. R. Civ. P. 23(b)(2) ................................................................................................ *passim*

Fed. R. Civ. P. 23(c)(1) ...................................................................................................... 12

Fed. R. Civ. P. 23(g) ...................................................................................................... 18, 19

Fed. R. Civ. P. 36(a)(3) ....................................................................................................... 6

1114202

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 8, 2017, at 10:00 a.m., before the Honorable Allison Claire, in Courtroom 26 of the courthouse at 501 I Street, Sacramento, Plaintiffs Everett Jewett, Legal Services for Prisoners with Children, Glen Harold Everett, and Michael Donald Ackley, ("Plaintiffs") will move for an order certifying the following class for purposes of injunctive and declaratory relief:

> All current and future detainees and prisoners at Shasta County Jail with mobility disabilities who, because of their disabilities, need appropriate accommodations, modifications, services, and and/or physical access in accordance with federal and state disability laws.

For purposes of this Motion, mobility disability means any impairment or medical condition that limits a person's ability to walk, ambulate, maneuver around objects and/or to ascend and/or descend steps or slopes.  A person with a mobility disability may or may not use a wheelchair, scooter, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist his or her navigation.

Plaintiffs have met the numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure ("FRCP") 23(a).  In addition, this class is appropriate for certification under Federal Rules of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on a basis applicable to the class as a whole.

This Motion is based upon this Notice; the accompanying Memorandum of Points of Authorities; Declarations; all pleadings and papers on file in this action, and upon any argument or evidence which may be presented at the hearing of this matter.

//
//
//
//
//
//

1114202

1    Dated:  January 27, 2017                    KEKER & VAN NEST LLP

2

3                                        By:    _/s/ Steven P. Ragland_
                                                STEVEN P. RAGLAND
4                                               AJAY S. KRISHNAN
                                                TAYLOR GOOCH
5

6                                               ATABEK & ASSOCIATES, P.C.
                                                JON A. ATABEK
7
                                                DISABILITY RIGHTS LEGAL CENTER
8                                               MARONEL BARAJAS
                                                ANNA RIVERA
9
                                                Attorneys for Plaintiffs
10                                              EVERETT JEWETT, LEGAL SERVICES
                                                FOR PRISONERS WITH CHILDREN,
11                                              GLEN HAROLD EVERETT, MICHAEL
                                                DONALD ACKLEY, HAROLD ROBERT
12                                              MARQUETTE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 2:13-cv-0882 MCE AC (PC)

1114202

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case presents the kinds of systemic legal and factual issues for which the Rule 23 class certification was intended.  The Fifth Amended Complaint ("FAC") (Docket No. 65) alleges that  the Shasta County Sheriff's Office, Shasta County, Sheriff Tom Bosenko, in his official capacity,[1] and California Forensic Medical Group, Inc. ("Defendants"), have systemically failed to comply with Title II of the Americans with Disabilities Act ("Title II" or "ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), California Civil Code §§ 51 and 52.1, *et seq.*, California Government Code § 4450, *et seq.*, and California Government Code § 11135 by failing to provide accommodations, modifications, services, and/or physical access to prisoners with mobility disabilities who, because of those disabilities, need them to access the Shasta County Jail ("Jail").  These are broad anti-discrimination statutes that require Defendants to affirmatively conduct system-wide accessibility planning and to develop and effectively implement system-wide policies to ensure its programs, services, activities and facilities are accessible to prisoners with mobility disabilities.

Despite these laws and the acute need for accommodations and physical access within the Jail, Defendants have failed to comply with these basic, affirmative, and system-wide obligations. Prisoners with mobility disabilities are denied accommodations, provided inadequate accommodations, inappropriately segregated from the general population, placed in 23-hour lock down, excluded from Jail programs, and subjected to multiple and pervasive physical access barriers throughout the facilities, including the lack of accessible showers and toilets.  The result is a system that imposes some of the worst conditions on people with mobility disabilities while, at the same time, excluding them from the most beneficial programs within the Jail.  These conditions arise, in part, because:

> a.   There is no comprehensive set of policies or procedures for determining appropriate accommodations, modifications or services for prisoners with

---

[1] Sheriff Tom Bosenko is named only in his official capacity, and thus all references to him, unless stated otherwise, refer to him in his official capacity only.

1114202

disabilities;

    b. People who are identified as having mobility disabilities and who require assistive devices are frequently housed in segregated facilities that provide severely restricted access to the programs and services available in the Jail; and

    c. Architectural barriers are pervasive throughout the Jail.  These include a failure to make housing and programming accessible to people with mobility disabilities.

By this motion, Plaintiffs Everett Jewett, Legal Services for Prisoners with Children, Glen Harold Everett, and Michael Donald Ackley, ("Plaintiffs") seek to certify a class of "all current and future detainees and prisoners at Shasta County Jail with mobility disabilities who, because of their disabilities, need appropriate accommodations, modifications, services, and and/or physical access in accordance with federal and state disability laws."[2]

The pervasive nature of the accessibility and physical barriers throughout the Jail is the direct result of the common failed practices and policy deficiencies identified in the FAC, making this case particularly appropriate for class certification under Federal Rule of Civil Procedure 23(b)(2).  *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.,* 249 F.R.D. 334, 345 (N.D. Cal. 2008) (hereinafter "*Caltrans*") ("Cases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2).").

Determining the extent of Defendants' liability for their alleged failure to comply with systemic planning and policy requirements of federal and state disability access laws will necessarily involve numerous questions of fact and law that are common to the proposed class.  These questions, in turn, will inherently generate common answers.  Certification of this class is therefore the most efficient and desirable way to address these issues.

---

[2] For purposes of this Motion, "mobility disability" means any impairment or medical condition that limits a person's ability to walk, ambulate, maneuver around objects and/or to ascend and/or descend steps or slopes.  A person with a mobility disability may or may not use a wheelchair, scooter, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist his or her navigation.

1114202

II.   **FACTS**

    A.   **The Shasta County Jail Houses and Processes Numerous Detainees with Mobility Disabilities Every Year.**

        The Jail processes over 12,000 prisoners a year.  Declaration of Taylor Gooch ("Gooch Decl."), Ex. D (Expert Report of Julian Martinez) ("Martinez Report") at 7.  The Jail is comprised of an entry level floor that includes a lobby, visitor security entrance, lobby restrooms, booking and intake areas, visiting areas, and the Jail's Outpatient Housing Unit ("Medical Unit"),[3] with an additional three levels of prisoner housing above the entry level floor.  FAC ¶ 38-41; Gooch Decl., Ex B (Facility Accessibility Survey Report) ("Bishop Report") at 7.  Each of the three upper levels, referred to as levels 1 through 3 respectively, are divided into four pods each consisting of two tiers.  Gooch Decl., Ex. B at 7.  (This brief will refer to all cells in tiers 1 through 3 as "general population cells").  Each pod has a shower and day room with dining tables. *Id.*  Additionally, each Level has access to a classroom and an outdoor exercise yard with an outdoor restroom.  *Id.* The upper tier of each pod is only accessible via a stairway. *Id.* The entire Jail houses up to 381 prisoners (317 males and 64 females). *Id.* The Jail admits that no general population cell is "designated accessible for use by individuals with disabilities."  Gooch Decl., Ex. F (Shasta County Sheriff's Department's Response to Plaintiff's First Set of Request for Admissions) ("Sheriff RFAs") at No. 8.

        Plaintiffs' expert Julian Martinez estimates that there are between 16 to 38 prisoners with mobility disabilities incarcerated in the Jail at any given time.  Gooch Decl., Ex. D (Martinez Report) at 4.  He further estimates that the Jail processes between 516 to 1,200 persons with mobility disabilities detained annually.  Moreover, Defendants cannot credibly refute these numbers as they have no method for tracking prisoners with disabilities and no policies in place for identifying individuals with mobility disabilities.  *Id*. at 8.

    B.   **The Shasta County Jail Offers a Wide Array of Programs, Services and Activities to Non-Disabled Detainees.**

        The Shasta County Jail offers a wide variety of "programs", "services" and "activities" to

---

[3] The Medical Unit is operated within the Jail by Defendant CFMG in coordination with Defendant County and Defendant Shasta County Sheriff's Department.

1114202

detainees and prisoners, as those terms are used in Title II of the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794.  "Programs" generally refers to more specialized activities that are provided for effective incarceration and potential rehabilitation.  At the Jail, these programs include at least: substance abuse education; moral reconation therapy; computer class; General Education Development courses; Malachi Dads; Narcotics Anonymous; Alcoholics Anonymous; social groups; life skills; Celebrate Recovery; drug and alcohol treatment; church services; and bible study.  Gooch Decl., Ex. J (list of programs offered at the Jail).

The Jail also provides numerous services to prisoners.  These services include all the daily activities required to assure the humane treatment of prisoners, including sanitary needs and hygiene, food service, recreation, necessary medical care, religious services, visitation, and other similar and necessary activities.

## C.    Defendants' Policies and Practices are Inadequate and Discriminatory to All Prisoners with Mobility Disabilities.

As alleged in the FAC, the declarations of the named representatives, and documented in the Bishop and Martinez Expert Reports, detainees with mobility impairments are regularly misclassified, assigned to non-ADA complaint cells, do not have equal access to programs and services, and encounter numerous physical barriers throughout the Jail. FAC  ¶¶ 3, 4, 6, 49-67, 51, 79; Declarations of Glen Everett ("Everett Decl.") ¶¶ 4, 5, 8, 9, 12; Everett Jewett ("Jewett Decl.") ¶¶ 4-7, 9, 10; Michael Ackley ("Ackley Decl.") ¶¶ 4, 5, 7-9, 11; Gooch Decl., Ex. B (Bishop Report) at 28-30; Gooch Decl., Ex. D (Martinez Report) at 8.

### 1.    Defendants have not even complied with state and federal self-evaluation and transition planning requirements.

The ADA required the Jail to have evaluated all of its services, policies, and practices to determine if its accessible to persons with disabilities by January 26, 1993.  Not only did the County not complete the required report until March 2005, but the report failed to address any issues related to prisoner housing.  Gooch Decl., Ex. O (Americans with Disabilities Act Barrier Removal Plan for County Jail) ("Barriers Removal Plan"); Ex. F (Sheriff RFAs) at Nos.15-17.

## 2. Defendants lack the system-wide policies and procedures necessary to identify and accommodate prisoners with mobility disabilities.

Defendants fail to appropriately identify and accommodate persons with mobility disabilities both at intake and while incarcerated.  Some of the most significant access issues for prisoners with mobility-disabilities include: (1) the failure to appropriately identify people with disabilities, resulting in inappropriate placement of people with disabilities; (2) the failure to provide appropriate mobility aids, such as wheelchairs, walkers and crutches; (3) the failure to accommodate the needs of people with mobility disabilities, including by failing to establish reliable methods for administration of medication, medical supplies and other disability accommodations; (4) the failure to modify policies and procedures for people with disabilities; (5) the failure to  remove multiple and pervasive architectural barriers throughout the Jail; (6) the failure to allow people with mobility disabilities access to vocational, educational and other programs and services; and (8) the failure to provide an effective complaint procedure for disability related complaints.  FAC  ¶ 50.

The lack of clear and enforceable policies has had and continues to create numerous dangerous conditions for prisoners with mobility disabilities while incarcerated.  For example, upon booking Defendants failed to provide appropriate mobility aids to all Named Plaintiffs. FAC  ¶ 50; Everett Decl. ¶ 5; Jewett Decl. ¶ 5; Ackley Decl. ¶ 5.  Additionally, the practice of regularly assigning mobility impaired prisoners the upper bunk and/or cells on the upper tier despite their limited physical abilities puts them in danger.  For example, while Plaintiff Mr. Jewett was assigned an upper tier cell and was not permitted to use his cane, he fell down a flight of stairs, knocking him unconscious and both exacerbating his preexisting disabilities and creating new ones.  Jewett Decl. ¶ 7.  Furthermore, mobility disabled prisoners housed in the Medical Unit are in conditions similar to that of solitary confinement, spending at least 23 hours per day in their cells.  Gooch Decl., Ex.  I (Plaintiff's First Set of Request for Admissions to

1114202

1   Defendant CFMG, Inc.) [4] ("CFMG RFAs") at No. 12; Jewett Decl. ¶ 8; Everett Decl. ¶ 11.  The

2   sole reason often given to mobility-impaired prisoners for being held in the Medical Unit was the

3   prisoners' need for mobility assistive devices.  *See* Jewett Decl. ¶ 8; *see also* Gooch Decl., Ex. F

4   (Sheriff  RFAs) at No. 12; Ex. I (CFMG RFAs) at Nos. 9-10; Ex. G, (Shasta County Sheriff's

5   Department's Response to Plaintiff's First Set of Request for Admissions) ("Shasta County

6   RFAs") at No. 8.

7               **3.      Defendants fail to provide access to services and programs for
                         prisoners with mobility disabilities and fail to remove multiple and**
8                        **pervasive barriers.**

9               The Defendants have systematically failed to provide even the most basic services to

10  prisoners with mobility disabilities.  Mobility-disabled prisoners assigned to general population

11  cells are forced to use showers that lack grab bars, have insufficient clearance, lack an accessible

12  seat, and have an elevated step of 6 to 8 inches to enter the shower.  Gooch Decl., Ex. B (Bishop

13  Report) at 18; Ex. G (Shasta County RFAs) at No.  5; Ex. F (Sheriff RFAs) at No.  11.  Fearful

14  for their own safety, mobility-disabled prisoners will resort to taking "bird baths" rather than

15  risking falling in the non-compliant showers.  Ackley Decl. ¶ 8.  While the Medical Unit has a

16  shower with grab bars and no elevated step, mobility-disabled prisoners are rarely permitted to

17  use it.  *Id.* at ¶ 9.  In addition, all toilets available to prisoners lack grab bars, creating unsafe

18  conditions for all mobility-disabled prisoners.  Gooch Decl., Ex. B (Bishop Report) at 29; Ex. G

19  (Shasta County RFAs) at Nos. 4, 11, Ex. F (Sheriff RFAs) at No. 9; Ex. I (CFMG RFAs) at No.

20  8; Jewett Decl. ¶ 6; Everett Decl. ¶ 8; Ackley Decl. ¶ 7.

21              In addition to failing to provide the most basic services to prisoners with mobility

22  disabilities, the Defendants fail to provide access to the same programs that are available to non-

23  _____

24  [4] Plaintiffs served CFMG RFAs on January 15, 2016.  *See* Gooch Decl., Ex. I (CFMG RFAs).
    Responses or objections were due on February 29, 2016.  Defendant CFMG failed to respond.
    Plaintiffs sent a letter reminding Defendant CFMG that the RFAs were past due on December 5,
25  2016.  Gooch Decl., Ex. O (Letter to Jerome Varanini from Taylor Gooch dated December 5,
    2016).  On December 6, 2016, Counsel for CFMG wrote, "We will get responses to you as
26  quickly as possible," but to date has still not responded the requests for admission.  Pursuant to
    FRCP 36(a)(3), "A matter is admitted unless, within 30 days after being served, the party to
27  whom the request is directed serves on the requesting party a written answer or objection
    addressed to the matter. . . ."  The requests, therefore should be deemed as admitted for all
28  purposes.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 2:13-cv-0882 MCE AC (PC)

1114202

1   disabled prisoners.  Mobility-disabled prisoners are not permitted to go to church.  Jewett Decl. ¶

2   9.  And while the mobility disabled prisoners are permitted use of the Yard, they are unable to do

3   so safely because of numerous physical barriers.  *Id.* at ¶ 10; Ackley Decl. ¶ 11; Everett Decl. ¶ 4.

4          Finally, there are numerous architectural barriers in the Shasta County Jail.  *See generally*,

5   Gooch Decl., Ex. B (Bishop Report).  Not a single cell in the Jail complies with the ADA.  *Id.* at

6   28-29.  All of these barriers put prisoners with mobility disabilities at risk of falling and/or

7   stumbling, placing them in great danger.

8              **4.    Defendants fail to modify policies and procedures for people with
                      disabilities and have failed to implement a functional complaint
9                     procedure.**

10         The Defendants have not only refused to modify their policies and procedures to

11  accommodate individuals with disabilities, but have retaliated against disabled prisoners for

12  requesting accommodations.  Requests for bottom bunks, lower tier cells, and use of their

13  assistive devices have been regularly denied.  Jewett Decl. ¶ 7.  Furthermore, mobility-disabled

14  prisoners are regularly denied access to grievance forms, preventing them from even requesting

15  the needed modifications.  *Id.* at  ¶ 11; Everett Decl. ¶ 13; Ackley Decl. ¶ 12. Mr. Jewett, for

16  example, was verbally abused, subjected to body cavity searches, denied medication, placed in

17  solitary confinement, and had his cane destroyed by Jail staff in retaliation for filing grievances.

18  Jewett Decl. ¶ 12.

19         **D.    The Discrimination Faced by Detainees with Mobility Disabilities is Caused
                   by Shasta County Jail's Policies, Practices, and Procedures (or Lack
20                 Thereof).**

21         The inhumane conditions that mobility-disabled prisoners are forced to endure at the Jail

22  are, in part, the result of the simple fact that the Jail does not have a comprehensive plan for

23  persons with disabilities.  Defendant Shasta County Sheriff's Office even admits the Jail has no

24  written policies regarding special-needs treatment plans or policies regarding the implementation

25  of orders given by a doctor or other medical professional for individuals with mobility

26  disabilities.  Gooch Decl., Ex. H (Defendant's Responses to Plaintiff's First Set of Requests for

27  Production of Documents) Responses to Request Nos. 5 and 8.  Policies and procedures related to

28  accommodations or modifications provided to individuals with disabilities at the Jail consist of

7

1114202

1    just two memoranda totaling two pages; the first states without detail—and contrary to actual

2    practice—that prisoners are permitted in general population cells and allowed to use their

3    assistive devices and the second memo, states that Mr. Jewett can use the shower in the Medical

4    Unit.  *Id.* at Response to Request No. 3; Ex. L (memorandum dated February 27, 2014); Ex. K

5    (memorandum dated April 16, 2014).

6    **E.    The Named Representatives and the Proposed Plaintiff Class are Subject to**
      **Similar Discriminatory Consequences Because of Defendants Failed Policies**
7    **and Practices, Including Physical Barriers in the Jail.**

8        The pervasive and systemic discriminatory result of Defendants' failed policies and

9    practices, including physical barriers, as outlined above, has had lasting and harmful effects on all

10   four named representatives.

11   **1.    Everett Jewett.**

12       Everett Jewett is a "qualified person with a disability" within the meaning of all applicable

13   statutes, including 42 U.S.C. § 12131(2), 29 U.S.C. § 705(20)(B), and California Government

14   Code § 12926(m).  FAC ¶ 13.  Mr. Jewett suffers from chronic pain and has bulging and

15   herniated discs in his spinal column, degenerative disc disease, spinal stenosis, and muscular

16   neuropathy.  Jewett Decl. ¶ 2.  These conditions substantially limit his ability to walk, requiring

17   him to use a cane.  *Id.*  Mr. Jewett has been detained and/or incarcerated in the Shasta County Jail

18   multiple times over the past decade and was most recently there from about January 2013 to

19   December 2014.  *Id.* at ¶ 3.  Mr. Jewett was, among other things, denied the use of a cane, not

20   allowed to attend church services, was forced to avoid using the Yard due to the existence of

21   physical barriers, housed in the medical unit solely because he needed a mobility device, and

22   denied the use of accessible toilets and showers.  *Id.* at ¶ ¶ 4-10.  Further, these access barriers

23   have put Mr. Jewett at risk of getting hurt and he has, in fact, been injured as a result.  *Id.* at ¶ 7.

24   Mr. Jewett is currently incarcerated at California Medical Facility in Vacaville, California.  *Id.* at

25   ¶ 3.  Mr. Jewett is to return to Shasta County to serve his parole under this supervision of Shasta

26   County.  *Id.*

27   **2.    Glen Harold Everett.**

28       Glen Harold Everett is a "qualified person with a disability" within the meaning of all

applicable statutes, including 42 U.S.C. § 12131(2), 29 U.S.C. § 705(20)(B), and California

Government Code § 12926(m).  FAC ¶ 14.  Mr. Everett has Type II diabetes, muscular

neuropathy, chronic back pain, degenerative disk disease, and bulging discs.  Everett Decl., ¶ 2.

These conditions substantially limit his ability to walk, requiring him to use a cane.  *Id.*  Mr.

Everett has been detained and/or incarcerated in the Shasta County Jail multiple times over the

past decade and was most recently there from March 21, 2016 to September 14, 2016.  *Id.* at ¶ 3.

Mr. Everett is currently on parole and under the supervision of Shasta County.  *Id.* Mr. Everett

was, among other things, denied the use a cane and has had great difficulty using the showers in

the jail, due to the existence of physical barriers.  *Id.* at ¶¶ 5, 8, 9.

### 3.      Michael Don Ackley.

Michael Don Ackley is a "qualified person with a disability" within the meaning of all

applicable statutes, including 42 U.S.C. § 12131(2), 29 U.S.C. § 705(20)(B), and California

Government Code § 12926(m).  FAC ¶ 15.  Mr. Ackley has extensive back and leg injuries which

were caused when he was crushed by a heavy pipe nearly twenty years ago. Ackley Decl., ¶ 2.

Because of these injuries, Mr. Ackley's ability to walk has been substantially limited. *Id.*  Mr.

Ackley has used a variety of assistive devices in the past, and now uses crutches.  *Id.*  Mr. Ackley

is currently being detained in Shasta County Jail awaiting a trial on an unrelated matter.  *Id.* at ¶

3.  Mr. Ackley was, among other things, denied the use of crutches and has had great difficulty

using the jail showers due to the existence of physical barriers.  *Id.* at ¶¶ 4-7.

### 4.      Legal Services for Prisoners with Children.

A non-profit organization, Legal Services for Prisoners with Children ("LSPC") advocates

for the civil rights and empowerment of incarcerated parents, children, family members and

people at risk of incarceration by responding to requests for information, training, technical

assistance, litigation, and community activism.  Declaration of LSPC ("LSPC Decl.") ¶ 2.  In

2003, LSPC launched "All of Us or None" a grassroots organizing initiative of former prisoners

that fights for the rights of formerly and currently incarcerated people and their families.  *Id.* at ¶

5.  All of Us or None is a membership organization comprised of a network of chapters and

associated organizations nationwide, including a chapter in Sacramento, California.  *Id.*  There are

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 2:13-cv-0882 MCE AC (PC)

1114202

13,000 members of All of Us or None nationwide, and 200 who reside in Northern California. *Id*. LSPC currently expends substantial time and resources on advocacy work concerning policies and procedures that affect individuals with disabilities who are incarcerated in California's prisons and local county jails, including Shasta County Jail. *Id*. at ¶ 4. This work includes ensuring full access to all programs and services for disabled prisoners. *Id*. LSPC has been injured as a direct result of Defendant's refusal to comply with the ADA, the Rehabilitation Act, and analogous state statutes. *Id*. at ¶ 8.

## III.   ARGUMENT

Plaintiffs seek to certify a class consisting of all present and future detainees and prisoners with mobility disabilities who, because of their disabilities, need appropriate accommodations, modifications, services, and/or physical access in accordance with federal and state disability laws who are or will be held at the Shasta County Jail. This proposed class meets the requirements of FRCP Rule 23(a) and FRCP Rule 23(b)(2).

### A.   Legal Standards for Class Certification.

Class certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting Rule 23(a)). In addition, the proposed class must be certifiable under one of the three sub-provisions of Rule 23(b). Here, Plaintiffs seek to certify a class under Rule 23(b)(2) for injunctive and declaratory relief only. Accordingly, class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ." Fed. R. Civ. P. 23(b)(2).

The decision regarding whether to certify a class is committed to the district court's discretion. *Armstrong*, 275 F.3d at 871 n.28. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-*

1  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (hereinafter "Dukes").  "Merits questions

2  may be considered to the extent—but only to the extent—that they are relevant to determining

3  whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret.*

4  *Plans & Tr. Funds*, 133 S. Ct. 1184, 1195 (2013).  "Rule 23 grants courts no license to engage in

5  free-ranging merits inquiries at the certification stage."  *Id*. at 1194-95.  Here, the requirements

6  for class certification under this standard are satisfied.

7      **B.      Plaintiffs' Claims and the Defendants' Defenses are Inherently Systemic, and
           Therefore Appropriate for Resolution on a Class-Wide Basis.**

8

9      The Ninth Circuit has explained that cases alleging systemic non-compliance with the

10  disability access duties under Title II of the ADA and Section 504 are well-suited to class

11  certification because all the factual and legal issues that will determine the pubic entity's liability

12  focus on the defendant's acts and omissions.  *See Armstrong*, 275 F.3d at 868-69.  Similarly,

13  where Plaintiffs allege widespread barriers that are the result of system-wide policy failures,

14  courts favor certification because they can assess the public entity's liability without having to

15  separately adjudicate the effect of each alleged barrier on individual class members.  *See, e.g,*

16  *Caltrans*, 249 F.R.D. at 345-46.[5]

17      Accordingly, where Plaintiffs allege widespread physical access barriers resulting from a

18  public entity's system-wide policy failures (as in this case), federal courts have repeatedly and

19  routinely certified classes of persons with mobility disabilities affected by such barriers.  As the

20  court noted in *Caltrans*, "[c]ases challenging an entity's policies and practices regarding access

21  for the disabled represent the mine run of disability rights class actions certified under Rule

22  23(b)(2)."  *Caltrans*, 249 F.R.D. at 345*; see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.

23  1998) (Rule 23(b)(2) is satisfied if class members complain of a pattern or practice that is

24  generally applicable to the class as a whole).  In fact, the requirement of Rule 23(b)(2) "is almost

25  automatically satisfied in actions primarily seeking injunctive relief."  *Baby Neal for & by Kanter*

26

27  [5] Furthermore, at the class certification stage, Plaintiffs' allegations of centralized policy failures
    resulting in discrimination are sufficient without having to fully establish the merits of such

28  allegations.  *Id*. at 345 (*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)).

1114202

1    *v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (hereinafter "Kanter").  *Cf. Walters*, 145 F.3d at 1047

2    ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the

3    factual differences among the class members appears to demonstrate a fundamental

4    misunderstanding of the rule.").  Suits brought to vindicate civil rights are precisely the type of

5    suits for which Rule 23(b)(2) was designed.  *Walters*, 145 F.3d at 1047.  And numerous courts

6    have certified classes in cases analogous to this one, where Plaintiffs claim that a County has

7    violated federal and state disability laws.  *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*,

8    197 F.R.D. 522, 524 n.1 (S.D. Fla. 2000) (listing disability rights class action cases certified

9    under Rule 23(b)(2)).

10         Here, Plaintiffs challenge—and seek declaratory and injunctive relief from—systemic

11   policies and practices that subject them and others similarly situated to inhumane conditions and

12   confinement that violate the ADA, the Rehabilitation Act, and analogous state statutes.  Because

13   these access obligations, by their very nature, require an examination of Defendants' programs,

14   policies, practices and facilities as a whole, such claims are particularly well suited for class-wide

15   determination.

16         **C.    Plaintiffs Meet the Requirements of Rule 23(a).**

17                 **1.    Defendants have stipulated that numerosity is satisfied because there**
                         **are far too many class members to make joinder practicable.**
18

19         By stipulating, Rule 23(a)(1) is satisfied here.  Gooch Decl., Ex. A (Stipulation RE:

20   Numerosity) at ¶ 3.  Even without this stipulation, however, the proposed class satisfies the

21   numerosity prong of Rule 23(a)(1).[6]

22         To establish numerosity for a proposed class, Plaintiffs must show that the class is so

23   numerous that joinder of all members individually is "impracticable."  Rule 23(a)(1); *See Harris*

24   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (citation omitted)

25   ("'[I]mpracticability' does not mean 'impossibility. . . .'").  "No precise number of potential class

26   

27   _____

     [6] Plaintiffs provide the following analysis of Rule 23(a)(1) for the record, but in so doing do not
28   imply that there is a dispute that the proposed class satisfies Rule 23(c)(1).  Rather, numerosity
     has been established by stipulation.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 2:13-cv-0882 MCE AC (PC)

1114202

members is required, and whether joinder would be impracticable depends on the facts and circumstances of each case." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 613 (N.D. Cal. 2015).

In determining the size of the class, Courts may consider statistical . . . data. *Caltrans*, 249 F.R.D. at 347-48. The Court may also consider future plaintiffs in determining the size of the class. *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004); *see also* William B. Rubenstein, Newberg on Class Actions § 3:15 (5th ed. & 2016 Update) (discussing that concerns regarding future class members "may make class certification more, not less, likely"). Further, "[w]hen evaluating numerosity, courts should consider the number of class members, whether their identities are known, the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive relief is sought." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011); *see also Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014) ("When a class size is small, courts consider factors such as 'the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought.'" (citation omitted). Courts have also considered fear of retaliation in civil rights cases as an additional factor for relaxing the numerosity requirement "as such a fear might deter potential plaintiffs from suing individually, making a representative action especially pertinent." William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. & 2016 Update); *Chastain v. Cam*, No. 3:13-CV-01802-SI, 2016 WL 1572542, at *6 (D. Or. Apr. 19, 2016) (finding that current employees' "fear of retaliation" was a factor that "weighe[d] in favor of finding that joinder [was] impracticable."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding that class members' "fear of reprisals (especially in relation to the immigrant status of many)" weighed in favor of a finding of numerosity).

Here, the fundamental transitory nature of Shasta County Jail speaks to its numerosity. While the Jail's capacity is 381 prisoners, it books and processes more than 12,000 prisoners per year. Gooch Decl., Ex. D (Martinez Report) at 7. Plaintiff's expert Martinez estimates that as many as 38 prisoners with mobility disabilities are in the Jail on any given day. *Id.* at 4.

1  Furthermore, as many as 1,200 persons with mobility disabilities are estimated to be processed

2  through the Jail each year.  *Id.*  These numbers alone are sufficient to meet the numerosity

3  requirement.

4          Moreover, the Jail's transitory population results in the class including unnamed and

5  unknown future members which further makes joinder impracticable.  *Ali v. Ashcroft*, 213 F.R.D.

6  390, 408 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on denial of*

7  *reh'g on other grounds sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), *as amended on*

8  *reh'g* (Oct. 20, 2005); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir.

9  2000) ("In the case at hand, the fact that the class includes unknown, unnamed future members

10  also weighs in favor of certification."); *Henderson v. Thomas*, 289 F.R.D. 506, 510 (M.D. Ala.

11  2012) ("[T]he fluid nature of a plaintiff class—as in the prison-litigation context—counsels in

12  favor of certification of all present and future members").  Additionally, the proposed class seeks

13  only declaratory and injunctive relief which also weighs in favor of a finding joinder

14  impracticable.  *See Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (holding that the

15  numerosity requirement in a § 1983 action brought by 16 death row prisoners was satisfied after

16  observing that "numerosity requirement has been relaxed in cases like this where injunctive and

17  declaratory relief is sought" and that the class size may increase unpredictably as additional

18  prisoners are added to death row).

19                  **2.      Commonality is met because the lawsuit challenges system-wide**
                             **practices and policies that affect all detainees with mobility disabilities**
20                           **within the Jail.**

21          Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed.

22  R. Civ. P. 23(a); *see Dukes*, 564 U.S. at  368 (internal quotation marks and citations omitted).

23  However, to satisfy the commonality requirement "[a]ll questions of fact and law need not be

24  common," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation

25  marks and citation omitted).  Rather, one shared legal issue can be sufficient.  *Parsons v. Ryan*,

26  754 F.3d 657, 675 (9th Cir. 2014) ("So long as there is 'even a single common question,' a

27  would-be class can satisfy the commonality requirement of Rule 23(a)(2)") (internal quotation

28  marks and citation omitted).  The common question "must depend upon a common contention . . .

1114202

1  of such a nature that it is capable of class wide resolution—which means that determination of its

2  truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

3  stroke." *Dukes,* 564 U.S. at 350.

4  In a civil rights class action such as this one, the Ninth Circuit has held that "commonality

5  is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the

6  putative class members. . . .  In such circumstance, individual factual differences among the

7  individual litigants or groups of litigants will not preclude a finding of commonality."

8  *Armstrong*, 275 F.3d at 868.  A "single issue common to the class" satisfies the commonality

9  requirement.  *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007); s*ee also Wang v.*

10 *Chinese Daily News, Inc*., 737 F.3d 538, 542-44 (9th Cir. 2013).  Such issues are those which

11 have "the capacity . . . to generate common *answers* apt to drive the resolution of the litigation."

12 *Dukes*, 564 U.S. at 350 (internal citations omitted) (emphasis in original).

13 The case at hand is a quintessential civil rights class action alleging systemic

14 discrimination: Plaintiffs' claims rest upon a core set of failed policies, practices and procedures

15 that result in an overall failure to ensure the accessibility of the Jail.  These allegations raise legal

16 and factual questions that affect all prisoners with mobility disabilities throughout the Jail and are

17 therefore capable of common answers.

18 Additionally, in response to Plaintiffs' FAC, Defendants alleged, among other defenses,

19 that the relief sought by Plaintiffs and the proposed class would place an undue financial and

20 administrative burden on the Jail.  *See* Docket No. 70 (Answer to FAC by Defendants Shasta

21 County Sheriff's Department, Tom Bosenko, and Shasta County) at 17.  This defense further

22 underscores the fact that any resolution of Plaintiffs' claims will be common to all class members.

23 It requires the Court to evaluate the Defendants' total available resources and balance those with

24 the scope of work and resources required to achieve program accessibility.  Such an analysis will

25 in no way rely on an individualized analysis of the particular claims of each named

26 representatives or Proposed Class member. Thus, Defendants' own affirmative defenses indicate

27 the need for resolution on a class-wide basis.

28

1114202

### a.   Common Questions of Law

The Class members share, at a minimum, the following common legal questions raised in the FAC and Defendants' Answer:

1. What are the requirements for a compliant self-evaluation and transition plan addressing a public entity's Jail programs and facilities under Title II of the ADA, Section 504, and related state laws?

2. Whether Defendants are violating Title II of the ADA, 42 U.S.C. sections 12131, *et seq.*, and/or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, by failing to make their programs, services, and activities accessible to and useable by persons with disabilities, and otherwise discriminating against persons with disabilities, as set forth in paragraphs 1-99 of the Fifth Amended Complaint.

3. Whether Defendants are violating California Government Code Section 11135 (a), which prohibits denial of benefits to persons with disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state, as set forth in paragraphs 1-99 of the Fifth Amended Complaint.

4. Whether Defendants are violating California Civil Code § 51 *et seq.*, and/or California Government Code § 4450, *et seq.*, by failing to provide full and equal access to people with disabilities, as set forth in paragraphs 1-99 of the Fifth Amended Complaint.

### b.   Common Questions of Fact

The allegations in the FAC and Defendants' Answers give rise to numerous common question of fact, the answers to which will be applicable to the class as a whole.  Such common questions include, but are not limited to:

1. Do Defendants maintain and enforce polices to ensure that its facilities are accessible?

2. To what extent have Defendants failed to prepare and implement a transition plan regarding providing accessibility in the Jail?

3. What portions of the Jail are subject to new construction standards?

4. What are Defendants' financial resources available for remedying the access improvements needed for access, and to what extent can Defendants establish an undue burden?

These common questions of law and fact depend on common contentions and are not affected by the circumstances of any individual class member.  Thus, such questions are capable of generating common answers and hence are appropriate for class-wide resolution.  *Dukes*, 564 U.S. at 350.

### 3.   The named representatives' claims are typical of the class.

Class certification is proper when "the claims or defenses of the representative parties are

16

1114202

typical of the claims or defenses of the class." Rule 23(a)(3).  While the claims of the entire class

need not be identical, the class representatives must generally "possess the same interest and

suffer the same injury as the class members."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156

(1982) (internal quotation marks and citation omitted).  As with commonality, factual differences

among class members do not defeat typicality provided there are legal questions common to all

class members.  *See Armstrong*, 275 F.3d at 869 (recognizing that a class of putative prisoners

subject to discriminatory treatment by defendants would suffer different injuries due to different

disabilities, but those "minor" differences were "insufficient to defeat typicality").  The typicality

requirement serves to ensure that the named representatives' interests align with the interests of

the class. *See Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).

Typicality exists when (1) the named plaintiffs and other class members have the same or similar

injury, (2) the action is based on conduct which is not unique to the named plaintiffs, and (3)

other class members have been injured by the same course of conduct as the named plaintiffs. *See*

*Ellis*, 657 F.3d  at 984.  Typicality is met when plaintiffs' claims are "reasonably co-extensive

with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler*

*Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Armstrong*, 275 F.3d at 869.

      Here, the named representatives have experienced the same harm, rely on the same legal

theories, and seek the same declaratory and injunctive relief as all members of the Proposed

Class. For example, similar to members of the proposed class the named representatives:

1.  Have disabilities that require them to use assistive devices for mobility;

2.  Have been detained or incarcerated in Shasta County Jail;

3.  Were exposed to the same inhumane living conditions, discriminatory policies and
    procedures, and Defendants steadfast refusal to remove physical barriers to ensure
    prisoners with disabilities have equal access to programs and services.

4.  Have been and are routinely denied access to the Jails programs, services, activities
    and facilities as a result of Defendants' system-wide policy failures and deficient
    policies, practices and physical barriers as alleged in the FAC.

*See*, *e.g.* Jewett Decl.; Ackley Decl.; Everett Decl.

      Additionally, LSPC, has been forced to divert its resources and had its organizational

purpose frustrated as a result of Defendants violations of the ADA and related federal and state disability laws.  LSPC Decl. ¶ 8; *See also Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1037 (E.D. Cal. 2014), *appeal dismissed* (Aug. 7, 2014) (holding that an organization has standing if it evidences "that a challenged statute or policy frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways." (internal quotation marks and citation omitted)).

### 4.     The named representatives and their counsel will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In order to determine whether the interest of the class will be adequately protected, courts must resolve two questions:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks and citation omitted).  To answer these questions, courts look at a range of factors, including "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  *Ellis*, 657 F.3d at 985.

#### a.     Named Representatives

The named representatives will fairly and adequately represent the interests of all proposed class members.  As set forth above in the discussion of commonality and typicality requirements, named representatives share the same interests of declaratory and injunctive relief as the proposed class members.  The named representatives' mutual goal is to have the Court declare that Defendants' challenged policies and practices have violated, and continue to violate, the ADA, the Rehabilitation Act, as well as analogous California state statues and enjoin Defendants from future violations of the aforementioned laws.  Jewett Decl. ¶ 14; Ackley Decl. ¶ 14; Everett Decl. ¶ 15; LSPC Decl. ¶ 9.

#### b.     Plaintiffs' Counsel

Plaintiffs' counsel also meet the requirements of Rule 23(g), and should therefore be

1   appointed class counsel.  Under Rule 23(g), in appointing class counsel, a court must consider:

2   "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii)

3   counsel's experience in handling class actions, other complex litigation, and the types of claims

4   asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

5   counsel will commit to representing the class."

6       Here, the putative class is represented by the highly experienced legal team of Keker &

7   Van Nest LLC, Disability Rights Legal Center ("DRLC"), and Atabek & Associates, P.C., who

8   collectively have extensive expertise in complex civil litigation, in class action cases, and in

9   litigation regarding the rights of persons with disabilities and conditions of detention. *See*

10  *generally* Declarations of Steven Ragland ("Ragland Decl.), Anna Rivera, ("Rivera Decl."); Jon

11  Atabek ("Atabek Decl. ).  The list of counsels' qualifications is too long to recite here, but is set

12  forth in counsel's declarations accompanying this motion.  Briefly, Keker & Van Nest has been

13  both plaintiff and defense counsel in numerous class actions, including the successful

14  representation of a class of undocumented immigrants against the United States Department of

15  Homeland Security.  *Preap v. Johnson*, 303 F.R.D. 566  (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193

16  (9th Cir. 2016); Ragland Decl. ¶ 3.  DRLC has been counsel in many class action lawsuits

17  involving persons with disabilities and has obtained settlements that have benefitted large groups

18  of person with disabilities.  Rivera Decl. ¶ 8.  Plaintiffs will also be able to prosecute this matter

19  vigorously and will adequately protect the interests of absent class members, as such ably meet

20  the adequacy standards of Rule 23(g).  *See, e.g., Jordan v. County of Los Angeles*, 669 F.2d 1311,

21  1323 (9th Cir. 1982) (*overruled on other grounds by Cnty. of Los Angeles v. Jordan*, 459 U.S.

22  810 (1982)).  In addition, Plaintiff's counsel satisfies the requirements of Rule 23(g) as Counsel

23  has done extensive work in identifying and investigating the claims in this action.  Lastly, no

24  conflicts exist between counsel, Plaintiffs and the proposed class members that would

25  compromise their ability to represent the class.  Rivera Decl. ¶ 14; Atabek Decl. ¶ 12; Ragland

26  Decl. ¶ 10.

27      **D.      The Conditions of Rule 23(b)(2) are Met.**

28      A class action may be certified under Rule 23(b)(2) where "the party opposing the class

19

1114202

has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FRCP 23(b)(2). "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). For a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class," even if not all class members have been injured by the challenged practice. *Walters*, 145 F. 3d at 1047. The requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." *Kanter*, 43 F.3d at 58

The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was intended to cover. Here, Plaintiffs seek broad declaratory and injunctive relief – system wide improvements in the Jails' programs and facilities – on behalf of a large and transitory class of prisoners with mobility disabilities who are being denied access to the Jail's programs, services, and activities due to alleged deficiencies in Defendants' policies and practices. Additionally, the Proposed Class seeks only class-wide injunctive relief to address the alleged deficiencies, and does not seek any damages. Therefore, certification of the proposed class under Rule 23(b)(2) is proper.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion to certify the Class, make the named representatives Everett Jewett, Glen Harold Everett, Michael Donald Ackley, and Legal Services for Prisoners with Children the Class Representatives, and appoint Keker & Van Nest LLC, Disability Rights Legal Center, and Atabek & Associates, P.C., as Class Counsel.

//
//
//
//
//
//

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 2:13-cv-0882 MCE AC (PC)

1114202

Respectfully submitted

Dated:  January 27, 2017

KEKER & VAN NEST LLP

By:   */s/ Steven P. Ragland*

STEVEN P. RAGLAND
AJAY S. KRISHNAN
TAYLOR GOOCH

ATABEK & ASSOCIATES, P.C.
JON A. ATABEK

DISABILITY RIGHTS LEGAL CENTER
MARONEL BARAJAS
ANNA RIVERA

Attorneys for Plaintiffs
EVERETT JEWETT, LEGAL SERVICES
FOR PRISONERS WITH CHILDREN,
GLEN HAROLD EVERETT, MICHAEL
DONALD ACKLEY, HAROLD ROBERT
MARQUETTE

1114202