UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT JEWETT, et al., | No. 2:13-cv-0882 MCE AC P |
| Plaintiffs, | |
| v. | ORDER AND AMENDED FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA FORENSIC MEDICAL GROUP, INC. et al., | |
| Defendants. | |

This action proceeds on the basis of the Fifth Amended Complaint filed June 2, 2016. ECF No. 65. On March 8, 2017, the court held a hearing on plaintiffs' motion for class certification (ECF No. 83). Joseph Gooch, Steven Ragland, and Maronel Barajas appeared for plaintiffs. Gary Brickwood appeared for defendants Shasta County Sheriff's Department, Tom Bosenko, and Shasta County. There was no appearance on behalf of defendants California Forensic Medical Group, Inc (CFMG). All defendants had previously filed notices of non-opposition to the proposed class certification. On review of the motion, the documents filed in support, upon hearing the argument of counsel, and good cause appearing therefor, the court finds as follows:

I.   <u>Fifth Amended Complaint</u>

    A.  <u>Parties</u>

Individual named plaintiffs Everett Jewett, Harold Everett, and Michael Donald Ackley

1

are persons with mobility disabilities who are or were housed within Shasta County Jail ("SCJ" or "Jail") facilities.[1]  ECF No. 65 at 4.  Each named plaintiff suffers from a different disability that substantially limits their ability to walk and requires use of an assistive device to walk, such as a cane or crutches.  Id. at 5-6.  Each plaintiff has had a number of disability-related problems at the Jail, including, but not limited to, denial of accommodations, physical access, and access to programs at the Jail.  Id.

Plaintiff Legal Services for Prisoners with Children (LSPC), an organizational plaintiff, is a non-profit that advocates for the civil rights of incarcerated persons and their families.  Id. at 6.  LSPC currently spends substantial time and resources on advocacy work concerning policies and procedures affecting individuals with disabilities who are incarcerated in California's prisons and jails, including SCJ.  Id. at 6-7.

Defendant Shasta County is responsible for the SCJ facilities, as well as oversight of the Sheriff's Department; defendant Shasta County Sheriff's Department is responsible for operating the Jail; defendant Tom Bosenko is the Sheriff of Shasta County, named in his official capacity only; defendant CFMG is a for-profit organization that provides healthcare services to prisoners at the Jail pursuant to a contract with Shasta County; and defendants Does 1-25 are current or former Jail or CFMG staff who participated in the decisions to deny original plaintiff Jewett his assistive devices and to threaten him when he complained of defendants' failure to reasonably accommodate his mobility impairments.  Id. at 7-8.

### B. Allegations of the Fifth Amended Complaint

Plaintiffs allege that defendants have discriminated against and failed to accommodate mobility disabled prisoners at SCJ in a number of ways.  They assert that throughout SCJ, significant problems exist for people with disabilities with respect to classification, housing, access to programs and services, and physical access barriers.  Id. at 10.  Plaintiffs assert that defendants systemically fail to effectively evaluate the needs of people with disabilities within the Jail, and fail to meet those needs through appropriate accommodations and physical access.  Id.

---

[1] Harold Robert Marquette is also a named plaintiff but is not part of this class certification.  See ECF No. 83.

These systemic issues include, but are not limited to: inappropriate placement and/or security classification of people with mobility disabilities; failure to provide appropriate mobility aids; failure to accommodate the needs of people with mobility disabilities; failure to modify policies and procedures for people with mobility disabilities; failure to remove multiple and pervasive architectural barriers throughout the jails; failure to allow people with mobility disabilities access to vocational, educational, religious, and other programs and services; failure to have an emergency and/or evacuation policy for people with mobility disabilities; and failure to provide an effective complaint procedure for disability related complaints. Id.

Plaintiffs allege that these violations result from a number of pervasive problems, including, but not limited to the following:

- There is no comprehensive set of policies or procedures for determining appropriate accommodations, modifications or services for prisoners with disabilities;
- People who are identified as having mobility disabilities and who require assistive devices are frequently housed in segregated facilities that provide severely restricted access to the programs and services available in the Jail; and
- Architectural barriers are pervasive throughout the Jail. These include failure to make housing and programming accessible to people with mobility disabilities, as well as a failure to provide emergency evacuation plans for people with mobility disabilities.

Id. at 11.

With respect to the physical barriers at the Jail, plaintiffs assert that none of the cells are ADA complaint because they are not accessible to mobility disabled prisoners. Id. The Jail has no cells designated for use by prisoners with mobility disabilities, and none of the cells at the Jail, including those in the Medical Unit, have grab bars to allow prisoners with mobility disabilities to independently and safely use the toilet. Id.

In addition, mobility impaired prisoners are routinely segregated solely because of their assistive devices and housed in the Medical Unit, where they are kept on 23-hour lockdown (in conditions comparable to solitary confinement) and denied access to programs and religious services. Id. at 2-4, 11, 15-17. The Medical Unit where many mobility disabled prisoners are

1   housed is also deficient in that the cells do not have access features, such as clearance and knee
2   space for wheelchairs or hand bars for independent use of in-cell toilets. Id. at 3, 11. The
3   Medical Unit has only one shower with a grab bar and shower seat, which plaintiffs allege was
4   installed within the last year, well after this lawsuit was filed. Id. at 11. Even in the medical unit,
5   prisoners are routinely denied use of their assistive devices and, as a result, are often confined to
6   their beds, causing their health to deteriorate. Id. at 15-16.

7   　　　　When mobility disabled prisoners are given the option to be housed in general population,
8   they do so at their own peril: assistive devices are not permitted in general population, and there
9   are a number of physical and architectural barriers in general population housing. Id. at 14, 16-
10  17. The showers in general population do not have grab bars or shower seats, and there is a six-
11  to eight-inch lip that must be stepped over to enter the shower. Id. at 11. The thresholds of other
12  rooms have a one-inch bevel that must be stepped over. Id. at 3. The stairs between floors do not
13  have adequate handrail extensions. Id. There is no wheelchair seating in the day rooms, and no
14  place to sit in the yard. Id. at 3, 16. Also, mobility impaired prisoners in general population are
15  often assigned to upper bunks, despite their impairments, and have been injured after falling from
16  the bunks. Id. at 13, 15.

17  　　　　Mobility impaired prisoners in general population may request to use the Medical Unit
18  shower, but these requests are often denied and prisoners are forced to use the general population
19  showers, where they are at risk of injury. Id. at 11-13. Plaintiff Jewett, for example, has fallen in
20  the shower twice and will require knee replacement surgery as a result of the fall. Id. at 12-13.

21  　　　　Plaintiffs allege that they have suffered a number of injuries, often as a result of falling in
22  the shower, off a bunk, down the stairs, or being confined to their beds, as a result of the lack of
23  accommodations at SCJ. Id. at 12-13, 15. Plaintiffs contend that defendants are aware of the
24  problems but have refused to remedy the situation. Id. at Plaintiffs further allege that they have
25  been discriminated against based on their disabilities and have been denied the access to the
26  programs and services enjoyed by their non-disabled peers. Id. at 3.

27  　　　　C. Class Action Allegations
28  　　　　Plaintiffs seek to bring this action individually and on behalf of "all present and future

1 prisoners or detainees with mobility disabilities who are or will be held within the Shasta County
2 Jail." Id. at 20.  They allege that defendants have failed to comply with Titles II and III of the
3 Americans with Disabilities Act (ADA), the Rehabilitation Act, and analogous state statutes. Id.
4 Plaintiffs allege that defendants have not adopted and do not enforce appropriate policies and
5 procedures to ensure nondiscrimination against persons with disabilities, and equal access to
6 programs, services, and activities for persons with disabilities. Id. at 20-21.

7 Plaintiffs allege that defendants have failed and continue to fail to provide SCSD officers
8 and employees with appropriate training regarding their legal obligations under relevant federal
9 and state statutes. Id. at 21.  They similarly allege that defendants have failed and continue to fail
10 to provide CFMG employees with appropriate training and supervision regarding their legal
11 obligations under relevant federal and state statutes. Id.  Plaintiffs assert that defendants'
12 violations of the ADA, the Rehabilitation Act, and related federal and state statutes have injured
13 all members of the proposed class and violated their rights. Id.

14 Plaintiffs assert that they have met the numerosity, commonality, typicality, and adequacy
15 of representation requirements of Federal Rule of Civil Procedure 23(a). Id. at 21-22.

16         D.  Claims For Relief

17 The Fifth Amended Complaint sets forth eight overlapping causes of action.  The First,
18 Second, Fourth, and Six Causes of Action claim that defendants Shasta County Sheriff's
19 Department, Tom Bosenko, Shasta County, and CFMG violated § 504 of the Rehabilitation Act
20 of 1973 (29 U.S.C. § 794 et seq.), Title II of the ADA (42 U.S.C. § 1201, et seq.), and California
21 Government Code § 11135, , et seq. and § 4450, et seq.  ECF No. 65 at 23-28, 30-31, 32-33.

22 The Third and Fifth Causes of Action claim that defendant CFMG violated Title III of the
23 ADA, 42 U.S.C. § 12181, et. seq., and the Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq.
24 ECF No. 65 at 28-30, 31-32.

25 The Seventh Cause of Action is brought only by plaintiff Jewett against all defendants for
26 violations of the Bane Act, Cal. Civ. Code § 52.1.[2]  In the Eighth Cause of Action, plaintiff Jewett

27
28 ---
[2] California Civil Code § 52.1, also known as the Bane Act, serves as a state law remedy for constitutional or statutory violations accomplished through intimidation, coercion, or threats.  Cal.

also seeks monetary damages against defendants Shasta County Sheriff's Department, Tom Bosenko, Shasta County, and CFMG for violations of the ADA, the Rehabilitation Act, and analogous state statutes. ECF No. 65 at 33-35.

### E. Relief Sought

Plaintiffs seek declaratory relief and injunctive relief on behalf of all plaintiffs, and monetary damages for plaintiff Jewett. Id. at 35-36. Specifically, plaintiffs seek a declaration that defendants have violated, and continue to violate, the ADA, the Rehabilitation Act, and analogous California state statues, and they seek to enjoin defendants from future violations of those laws. Id. Plaintiffs also seek attorney fees and costs, and request that the court retain jurisdiction of the case until defendants have fully complied with any court orders. Id. at 36.

## II. Plaintiff's Motion for Class Certification

Plaintiff seeks an order certifying this case as a class action under Fed. R. Civ. P. 23(b)(2). The proposed class consists of "[a]ll current and future detainees and prisoners at Shasta County Jail with mobility disabilities who, because of their disabilities, need appropriate accommodations, modifications, services, and and/or physical access in accordance with federal and state disability laws." ECF No. 83 at 7, 10. For purposes of this motion, plaintiffs define "mobility disability" as "any impairment or medical condition that limits a person's ability to walk, ambulate, maneuver around objects and/or to ascend and/or descend steps or slopes." Id. at 7, 10 n.2. Plaintiffs further explain that a "person with a mobility disability may or may not use a wheelchair, scooter, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist his or her navigation." Id. at 10 n.2.

As previously noted, defendants have filed notices of non-opposition to plaintiffs' motion for class certification. ECF Nos. 86, 87. The parties agree, and confirmed at the hearing, that there is no need for discovery going to the propriety of class certification. Accordingly, the

---

Civ. Code § 52.1. Although analogous to § 1983, it is not tantamount to a § 1983 violation, requiring more than evidence of a violation of rights. Davis v. City of San Jose, 69 F. Supp. 3d 1001, 1007 (N.D. Cal. 2014); see also Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law.").

1  motion is appropriate for adjudication at this time.

2      A. Standards for Class Certification

3      A party seeking to certify a class must demonstrate that it has met all four requirements of

4  Rule 23(a) and at least one of the requirements of Rule 23(b). Zinser v. Accufix Research Inst.,

5  Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

10  Fed. R. Civ. P. 23(a). In other words, the class must satisfy the requirements of numerosity,

11  commonality, typicality, and adequacy.

12      Rule 23(b) provides for three types of class actions. Fed. R. Civ. P. 23(b). Here, plaintiff

13  seeks to certify the class under Rule 23(b)(2), which allows for a class to be certified if "the party

14  opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

15  making appropriate final injunctive relief or corresponding declaratory relief with respect to the

16  class as a whole." Fed. R. Civ. P. 23(b)(2).

17      The court must conduct a "rigorous analysis" of the moving party's claims to examine

18  whether the requirements are satisfied. Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 161

19  (1982). Generally, the court should not consider whether the party seeking class certification has

20  stated a cause of action or is likely to prevail on the merits. Eisen v. Carlisle & Jacquelin, 417

21  U.S. 156, 178 (1974). Nevertheless, the court may consider such evidence, when applicable, even

22  if the evidence may also relate to the underlying merits of the case. Hanon v. Dataproducts Corp.,

23  976 F.2d 497, 509 (9th Cir. 1992). If the court concludes that the moving party has met its

24  burden of proof, the court has broad discretion to certify the class. Zinser, 253 F.3d at 1186.

25      B. Requirements Under Rule 23(a)

26          1. Numerosity

27      Fed. R. Civ. Proc. 23(a)(1) provides that numerosity exists if "the class is so numerous

28  that joinder of all members is impracticable." Defendants stipulate that plaintiffs have met the

7

1  numerosity requirement. ECF No. 83-3 at 3-4; ECF No. 86 at 2; ECF No. 87 at 2.

2  Plaintiff's expert Julian Martinez reports that as many as thirty-eight prisoners with
3  mobility disabilities are in the Jail on any given day. ECF No. 83-7 at 159, 170. Furthermore,
4  Martinez estimates that between 516 to 1,200 mobility disabled detainees are processed by the
5  Jail in any given year. Id. In general, courts find the numerosity requirement satisfied when a
6  class includes at least forty members. See Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir.
7  2010) (citing Gen. Tel. Co. of the N.W. v. EEOC, 446 U.S. 318, 330 (1980)). Thus, the estimated
8  size of the proposed class here raises a presumption of impracticability based on numbers alone.
9  This is especially true where, as here, the class includes future, unknowable class members. See
10 Hernandez v. Cnty. of Monterey, 305 F.R.D. 132, 153 (N.D. Cal. 2015).

11 Because the class is well over forty members, and defendants have stipulated to
12 numerosity, the undersigned finds that plaintiffs meet the numerosity requirement.

13       2.  Commonality

14 Defendants do not dispute that there are questions of law or fact common to the class and
15 that the commonality requirement is thus met. ECF No. 86 at 2; ECF No. 87 at 2.

16 Commonality exists when "there are questions of law or fact common to the class." Fed.
17 R. Civ. P. 23(a)(2). Rule 23(a)(2) does not require that every or all questions of fact or law be
18 common or identical. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). In a civil
19 rights suit, the commonality requirement is satisfied where the suit challenges a "system-wide
20 practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d
21 849, 868 (9th Cir. 2001), cert. denied, 537 U.S. 812 (2002), abrogated on other grounds by
22 Johnson v. California, 543 U.S. 499, 504-05 (2005); see also Wal-Mart Stores v. Dukes, 131 S.
23 Ct. 2541, 2553 (2011) (reaffirming that where a system-wide policy or practice is the cause of
24 class members' injuries, plaintiffs satisfy the commonality requirement); Stockwell v. City &
25 Cnty. of San Francisco, 749 F.3d 1107, 1111-13 (9th Cir. 2014). Thus, commonality may exist
26 where there is a common legal issue with varied factual predicates. Hanlon, 150 F.3d at 1019-20.

27 Here, plaintiffs allege that all class members have been discriminated against by
28 defendants' failure to comply with the ADA, the Rehabilitation Act, and analogous state statutes.

Plaintiffs allege that defendants have not adopted and do not enforce appropriate policies and procedures to ensure nondiscrimination against prisoners with mobility disabilities and equal access to programs, services, and activities for persons with mobility disabilities. These issues require an examination of defendants' programs, policies, practices and facilities as a whole. Of course, the experiences of individual plaintiffs will likely be relevant to prove that defendants' policies, procedures, and practices resulted in discrimination against mobility disabled prisoners and lack of access to programs, services, and activities for prisoners with mobility disabilities. However, the alleged injuries and legal theories are the same across the class.

In Armstrong, the Ninth Circuit affirmed certification of a class of disabled life prisoners who challenged the accommodations provided by the board of prison terms at and in relation to parole hearings. The court rejected the argument that the different types of disability experienced by the class members – hearing impairments, visual impairments, mobility impairments, developmental disabilities and learning disabilities – defeated commonality. The court reasoned that differences among the individual litigants did not preclude a finding of commonality because all plaintiffs challenged a single system-wide policy or practice affecting all putative class members. Armstrong, 275 F.3d at 868.

In Parsons v. Ryan, 754 F.3d 657 (9th Cir. 2014), the Ninth Circuit affirmed class certification, holding that "[t]he putative class and subclass members . . . all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified [system-]wide policies and practices to which they are all subjected . . . expose them to a substantial risk of harm." Id. at 678 (citing Wal-Mart, 131 S. Ct. at 2551). Because of the nature of the plaintiffs' system-wide challenge, "either each of the policies and practices is unlawful as to every inmate or it is not." Id. Any determination of the merits would "not require [the court] to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." Id. at 679.

The same analysis set forth in Armstrong and Parsons applies here. Plaintiffs are challenging systemic discrimination based on failed policies, practices and procedures that result in an overall failure to ensure the accessibility of the Jail for prisoners with mobility disabilities.

Either plaintiffs are housed in a facility that comports with the ADA, the Rehabilitation Act, and analogous state statutes, or they are not.[3] Claims of this kind – involving detailed factual and legal allegations of specified systemic deficiencies in prison practices and policies that affect all putative class members – have long been brought in the form of class actions lawsuits. See, e.g. Armstrong, 275 F.3d at 868 (differences in particular class members' disabilities did not justify requiring separate actions, since all disabled prisoners and parolees suffered similar harm from board's system-wide failure to accommodate their disabilities); Hernandez, 305 F.R.D. at 157 (commonality in case challenging, inter alia, system-wide, insufficient accommodations for persons with disabilities); Parsons v. Ryan, 289 F.R.D. 513, 516-23 (D. Ariz. 2013) (commonality in case challenging medical and mental healthcare provided to 33,000 inmates in Arizona); Henderson v. Thomas, 289 F.R.D. 506, 511 (M.D. Ala. 2012) (commonality for ADA claims challenging Alabama prison policy of segregating HIV positive inmates from general prison population); see also Clark v. California, No. C96-1486 FMS, 1998 WL 242688, at *6, 1998 U.S. Dist. LEXIS 6770, at *17-19 (N.D. Cal. May 11, 1998) (refusing to decertify a class of developmentally-disabled inmates seeking certain accessibility improvements in a prison system pursuant, in part, to the ADA).

Plaintiffs have met or exceeded Wal-Mart's requirement of proof that there are "*in fact . . . common questions of law or fact.*" 131 S. Ct. at 2551. The materials they submitted include, but are not limited to: two plaintiff-retained expert reports; the detailed allegations in the Fifth Amended Complaint; the Department of Justice's Guidance on the 2010 ADA Standards for Accessible Design; Americans with Disabilities Act Barrier Removal Plan for County Jail; ADA Self-Evaluation Report and Barriers Removal Plan to Update County's ADA Transition Plan;

---

[3] A public entity must take steps, including altering existing or constructing new facilities, to accommodate inmates with disabilities unless to do so would fundamentally alter a program or create an undue financial or administrative burden. See 28 C.F.R. §§ 35.150, 35.152. Whether a facility was constructed prior to 1992 only determines whether the structure itself must comply fully with the ADA's architectural guidelines. See 28 C.F.R. § 35.151(a) & (b). That the jail was constructed before 1992 does not vitiate a defendant's obligation to accommodate inmates with disabilities or alter the reasonableness of an accommodation in any way. See Hernandez v. Cnty. of Monterey, 305 F.R.D. 132, 158 n.162 (N.D. Cal. 2015).

1   various internal documents; defendants' responses to plaintiffs' requests for admission,
2   interrogatories, and requests for production of documents; and declarations by the named
3   plaintiffs.  These documents constitute more than sufficient evidence at this stage in the litigation
4   of the existence of defendants' failure to comply with the ADA, the Rehabilitation Act, and
5   analogous state statutes, which allegedly exposes all members of the putative class to inadequate
6   accommodations, inappropriate segregation from the general population, placement in 23-hour
7   lock down, exclusion from Jail programs, and multiple and pervasive physical access barriers
8   throughout the facilities, including the lack of accessible showers and toilets.  These policies and
9   practices are defined with sufficient precision and specificity; they involve particular and readily
10  identifiable conduct and omissions on the part of defendants—namely, failure to provide
11  accommodations, modifications, services, and physical access to prisoners with mobility
12  disabilities in violation of the ADA, the Rehabilitation Act, and analogous state statutes.  The
13  evidence submitted by plaintiffs adequately demonstrates the existence of systemic failure to
14  comply with federal and state disability access laws.

15       Accordingly, the undersigned finds that the commonality requirement is met.

### 3. Typicality

17  Defendants do not dispute that "the claims or defenses of the representative parties are
18  typical of the claims or defenses of the class."[4]  ECF No. 86 at 2; ECF No. 87 at 2.

19  Typicality requires that "the claims or defenses of the representative parties are typical of
20  the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  As such, it substantially overlaps
21  with the test for commonality.  For typicality to be met, named plaintiffs' claims need not be
22  identical to those of the putative class members. Hanlon, 150 F.3d at 1020.  Instead, plaintiffs'
23  claims need only be "reasonably coextensive" with the claims of the putative class. Id.  The
24  inquiry focuses on the claims themselves, not on the factual predicates from which the claims
25  arise. Hanon, 976 F.2d at 508.  "The test of typicality 'is whether other members have the same

---

[4] Defendants state, however, that because plaintiff Jewett is the only plaintiff alleging Bane Act violations and the only plaintiff seeking monetary damages, they are not waiving the right to challenge plaintiff Jewett's position as a class representative should those unique claims interfere with his adequacy as a class representative. ECF No. 86 at 2; ECF No. 87 at 2.

1  or similar injury, whether the action is based on conduct which is not unique to the named
2  plaintiffs, and whether other class members have been injured by the same course of conduct.'"
3  Id.
4      Here, plaintiffs Jewett, Everett, and Ackley are all persons with mobility disabilities that
5  were or are detained in SCJ.  Similar to members of the proposed class, the named representatives
6  have disabilities that require them to use assistive devices for mobility; have been detained or
7  incarcerated in SJC; were exposed to the same inhumane living conditions, discriminatory
8  policies, and procedures, and defendants' refusal to remove physical barriers to ensure prisoners
9  with disabilities have equal access to programs and services; and have been and are routinely
10 denied access to the Jail's programs, services, activities and facilities as a result of defendants'
11 system-wide policy failures and deficient policies, practices and physical barriers.  See ECF Nos.
12 65, 83-4, 83-5, 83-6.  They each allege that defendants have failed to make the programs,
13 services, and activities offered by SCJ accessible to persons with mobility disabilities and have
14 failed to adopt appropriate policies and procedures for housing, accommodating, and caring for
15 persons with mobility disabilities.  Between the four of them, they allege injuries similar to the
16 injuries suffered by the class, including lack of mobility aids, failure to accommodate disabilities,
17 segregation into inappropriate facilities within the Jail, systemic architectural barriers within the
18 Jail, and denial of access to programs and services.  All class members are subject to the same
19 alleged discrimination and inhumane living conditions based on defendants' failure to comply
20 with state and federal disability access laws: they have been and are routinely denied access to the
21 Jail's programs, services, activities, and facilities.  All named plaintiffs seek a declaration that
22 defendants have violated, and continue to violate, the ADA, the Rehabilitation Act, and analogous
23 California state statues, and they seek to enjoin defendants from future violations of those laws.
24     With respect to organizational plaintiff LSPC, it meets the requirements set out in Sierra
25 Club v. Morton, 405 U.S. 727, 732 (1972), that an organization must show a "personal stake in
26 the outcome of the controversy" to have standing to sue either in its own capacity or on behalf of
27 a class.  See I.M.A.G.E. v. Bailar, 78 F.R.D. 549, 553 (N.D. Cal. 1978).   "[A]n organization may
28 ////

represent its members who are injured by conduct alleged in a complaint,[5] particularly if its raison d'etre is to represent the class." Id. "The Supreme Court has held that it is sufficient to establish standing if an organization seeks to protect an interest of its own arguably within the zone of interests to be protected or regulated by the applicable statute or constitutional guarantee." Id. (quoting United States v. SCRAP, 412 U.S. 669, 686-90 (1973)).

LSPC advocates for the civil rights of incarcerated persons and their families. It currently spends substantial time and resources on advocacy work concerning policies and procedures affecting individuals with disabilities who are incarcerated in California's prisons and jails, including SCJ. LSPC alleges that it has been forced to divert its resources and had its organizational purpose frustrated as a result of defendants' violations of the ADA and related federal and state disability laws. ECF No. 83-7 at 3, ¶ 8.

Because all named plaintiffs have alleged system-wide policy failures, the undersigned finds that their alleged injuries are necessarily typical of those of unnamed class members.[6]

### 4. Adequacy of Representation

Defendants do not dispute that "the representative parties will fairly and adequately protect the interests of the class."[7] ECF No. 86 at 2-3; ECF No. 87 at 2.

Adequacy of representation requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for plaintiffs to adequately represent the putative class members, they must demonstrate, first, that they do not possess any conflicts of interest with the class members and, second, that both plaintiffs and their counsel will

---

[5] Questions as to the adequacy of representation for the proposed class are discussed separately below.

[6] That plaintiff Jewett asserts an additional Bane Act violation claim and seeks damages does not make his interest any less aligned with, or less typical of, the interests of the class. See Kamar v. Radio Shack Corp., 254 F.R.D. 387, 396 (C.D. Cal. 2008), aff'd sub nom. Kamar v. RadioShack Corp., 375 Fed. Appx. 734 (9th Cir. 2010). The Bane Act claim, similar to the class action claims (Causes of Action One through Six), arise from defendants' failure to accommodate his mobility impairments. ECF No. 65 at 8-9, 33-34.

[7] Defendants state that, because plaintiff Jewett is the only class representative alleging Bane Act violations and the only class representative seeking monetary damages, they are expressly reserving the right to challenge his position as a class representative if, in the course of this litigation, plaintiff Jewett's unique individual claims create a conflict of interest with other class members. ECF No. 86 at 2-3; ECF No. 87 at 2.

1  work to "prosecute the action vigorously" with respect to the entire class.  Staton v. Boeing Co.,
2  327 F.3d 938, 957 (9th Cir. 2003).

3  Here, the named plaintiffs' interests are not antagonistic to those of the class.  To the
4  contrary, as set forth above in the discussion regarding commonality and typicality requirements,
5  the named plaintiffs share the same interests of declaratory and injunctive relief as the proposed
6  class members.  The named plaintiffs' mutual goal is to have the court declare that defendants
7  have violated, and continue to violate, the ADA, the Rehabilitation Act, as well as analogous
8  California state statues and to enjoin defendants from future violations of those laws.  ECF No.
9  83-4 at 3, ¶ 14; ECF No. 83-5 at 3, ¶ 15; ECF No. 83-6 at 3, ¶ 14; ECF No. 83-7 at 3, ¶¶ 9-10.
10 The named plaintiffs also expressly declare that they are aware that, as plaintiffs in this lawsuit,
11 they are "trying to be a representative for all incarcerated people with mobility disabilities" and
12 that their "duty as a class representative in this case is to do what is in the best interest of the
13 class."  ECF No. 83-4 at 4, ¶ 15; ECF No. 83-5 at 3, ¶ 16; ECF No. 83-6 at 3, ¶ 15; ECF No. 83-7
14 at 3, ¶ 10.[8]

15 The court notes that the named individual plaintiffs would not be inadequate class
16 representatives because they may be transferred to another facility.  The fluidity of a prison's
17 population is a factor that supports class certification.  Stewart, 669 F.2d at 334.  If a named
18 plaintiff's release or transfer renders him an inadequate representative, the proper remedy is to
19 permit his substitution by a new class representative.  Id.

20 Finally, the putative class is represented by able and experienced attorneys— Keker &
21 Van Nest LLC, Disability Rights Legal Center ("DRLC"), and Atabek & Associates, P.C.
22 Plaintiffs' documents confirm that these attorneys have sufficient resources to prosecute this
23 action and have extensive experience handling civil rights class action lawsuits, complex civil

---

[8] The court recognizes that class representatives may seek relief different from class members without rendering themselves inadequate.  See Stewart v. Winter, 669 F.2d 328, 333 (5th Cir. 1982).  The fact that plaintiff Jewett is pursuing an individual damages claim does not necessarily disqualify him or make his interests antagonistic to those of the class.  See id. at 335.  With regard to adequacy as well as typicality, see supra n. 6, defendants state that they expressly reserve the right to challenge his position as a class representative if, in the course of this litigation, Jewett's unique individual claims create a conflict of interest with other class members.

litigation, and litigation involving the rights of persons with disabilities and conditions of detention. See ECF Nos. 83-8, 83-9, 83-10, 83-11, 83-12. In addition, plaintiffs' counsel satisfies the requirements of Rule 23(g) as they have done extensive work in identifying and investigating the claims in this action. Finally, no conflicts exist between counsel, the named plaintiffs, and the proposed class members that would compromise their ability to represent the class. See ECF No. 83-8 at 4, ¶ 10; ECF No. 83-9 at 8, ¶ 14; ECF No. 83-12 at 3, ¶ 12.

For these reasons, the undersigned finds that the named plaintiffs are an adequate class representative.

C.  Requirements Under Rule 23(b)(2)

The analysis of Rule 23(b)(2) overlaps with the factors in Rule 23(a). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, plaintiffs seek system-wide improvements in the Jails' programs and facilities that apply to all class members. Therefore, plaintiff's allegations satisfy this requirement. The injunctive relief sought by plaintiffs would apply to the class as a whole. The claims in this suit would not entitle named or unnamed class members to any form of individualized injunctive relief.

D.  Conclusion

For the reasons explained above, the undersigned recommends certification of the class pursuant to Rule 23(b)(2).

Accordingly, IT IS ORDERED that the Findings and Recommendations issued March 9, 2017 (ECF No. 89) are hereby vacated.

IT IS FURTHER HEREBY RECOMMENDED that:

1. Plaintiffs' motion for class certification (ECF No. 83) be granted.

2. The following class be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure: "All current and future detainees and prisoners at Shasta County Jail with mobility disabilities who, because of their disabilities, need appropriate accommodations, modifications, services, and and/or physical access in accordance with federal and state disability laws."

1          3.  Keker & Van Nest LLP, Disability Rights Legal Center, and Atabek & Associates, P.C. be appointed class counsel.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE